## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Rimfrost Technologies AS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| Aker BioMarine Antarctic US | ) | **Jury Trial Demanded** |
| LLC; Aker BioMarine | ) | |
| Manufacturing LLC; Aker | ) | |
| BioMarine US Holding Inc.; Aker | ) | |
| BioMarine ASA; Lang Pharma | ) | |
| Nutrition, Inc.; NewRide LLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Rimfrost Technologies AS ("Rimfrost"), for its Complaint against Defendants Aker BioMarine Antarctic US LLC, Aker BioMarine Manufacturing LLC, Aker BioMarine US Holding Inc., Aker BioMarine ASA, Lang Pharma Nutrition, Inc., and NewRide LLC (collectively, "Aker"), alleges as follows:

## THE PARTIES

1.     Plaintiff Rimfrost Technologies AS is a corporation organized and existing under the laws of Norway, having its principal place of business at Notenesgata 6, 6002 Ålesund, Norway.

2.      On information and belief, Defendant Aker BioMarine Antarctic US LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 4494 Campbell Road, Houston, TX 77041.

3.      On information and belief, Defendant Aker BioMarine Manufacturing LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 4494 Campbell Road, Houston, TX 77041.

4.      On information and belief, Defendant Aker BioMarine US Holding Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 15 S Grady Way Suite 610, Renton, WA 98057.

5.      On information and belief, Defendant Aker Biomarine ASA is a limited liability company domiciled in Norway with its registered office at Oksenøyveien 10, 1366 Lysaker, Norway. On information and belief, Defendant Aker Biomarine ASA is the parent company for the other Aker entities, which are subsidiaries.

6.      On information and belief, Defendant Lang Pharma Nutrition, Inc. is a corporation organized and existing under the laws of Rhode Island with a principal place of business at 20 Silva Lane, Middletown, RI 02842.

7.      On information and belief, Defendant NewRide LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 15 S Grady Way Suite 610, Renton, WA 98057. On information and belief,

Defendant NewRide LLC is a holding company for Defendant Lang Pharma Nutrition, Inc.

8.    On information and belief, Aker is in the business of harvesting and processing krill and producing krill oil products, which they manufacture in the United States and distribute, offer for sale, and sell in the State of Delaware and throughout the United States, as well as worldwide.

## NATURE OF THE ACTION

9.    This action alleging patent infringement by Aker arises under the patent laws of the United States, Title 35, United States Code, § 100 *et seq.*, including 35 U.S.C. § 271.

10.    Rimfrost Technologies AS is the owner by assignment of all rights, title, and interest in U.S. Patent No. 9,814,256 (the "'256 patent") and U.S. Patent No. 10,499,673 (the "'673 patent") (collectively, "Patents-in-Suit").

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

12.    This Court has personal jurisdiction over Defendant Aker BioMarine Antarctic US LLC because Aker BioMarine Antarctic US LLC is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

- 3 -

13.     This Court has personal jurisdiction over Defendant Aker BioMarine Manufacturing LLC because Aker BioMarine Manufacturing LLC is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

14.     This Court has personal jurisdiction over Defendant Aker BioMarine US Holding Inc. because Aker BioMarine US Holding Inc. is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

15.     This Court has personal jurisdiction over Defendant Aker BioMarine ASA because Aker BioMarine ASA has sufficient minimum contacts with this forum as a result of business conducted within the State of Delaware and this district. Personal jurisdiction also exists specifically over Aker BioMarine ASA because Aker BioMarine ASA, directly or through subsidiaries, intermediaries, or joint ventures, makes, uses, offers for sale, sells, and/or imports krill oil products within this district that infringe the Patents-in-Suit, as described more specifically below. Personal jurisdiction also exists specifically over Aker BioMarine ASA because Aker BioMarine ASA has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

16.     This Court also has personal jurisdiction over Defendant Aker BioMarine ASA because, on information and belief, Defendant Aker BioMarine ASA is

the parent company for the other Aker entities, which are subsidiaries, and exercises considerable control over the other Aker entities. Aker BioMarine ASA has described itself in its 2024 Annual Report (attached as **Exhibit A**), together with the other Aker entities, as a "Group" and stated that "[t]he Group is a global supplier of krill-derived products. . . . The Group purchases krill meal, which is then processed into oil-products in the United States and then sold worldwide." 2024 Aker BioMarine Annual Report at 57 (**Ex. A**).

17.    Alternatively, this Court may also exercise personal jurisdiction over Aker BioMarine ASA because the requirements of Federal Rule of Civil Procedure 4(k)(2) are met. Specifically, (a) Rimfrost's claims arise under federal law; (b) Aker BioMarine ASA is a foreign defendant not subject to personal jurisdiction in any state's courts of general jurisdiction; and (c) Aker BioMarine ASA has sufficient contacts with the United States as a whole, including but not limited to acting in concert with the other Aker entities with respect to the making, using, selling, and offering for sale of krill oil products in the United States and in Delaware, such that this Court's exercise of jurisdiction over Aker BioMarine ASA satisfies due process.

18.    Personal jurisdiction also exists specifically over Aker BioMarine ASA because Aker BioMarine ASA has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

19.    This Court has personal jurisdiction over Defendant Lang Pharma Nutrition, Inc. because Lang Pharma Nutrition, Inc. has sufficient minimum contacts with this forum as a result of business conducted within the State of Delaware and this district. Personal jurisdiction also exists specifically over Lang Pharma Nutrition, Inc. because Lang Pharma Nutrition, Inc., directly or through subsidiaries, intermediaries, or joint ventures, makes, uses, offers for sale, sells, and/or imports krill oil products within this district that infringe the Patents-in-Suit, as described more specifically below. Personal jurisdiction also exists specifically over Lang Pharma Nutrition, Inc. because Lang Pharma Nutrition, Inc. has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

20.    This Court has personal jurisdiction over Defendant NewRide LLC because NewRide LLC is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

21.    Further, this Court has personal jurisdiction over Aker by virtue of, *inter alia*, its presence in Delaware; having conducted business in Delaware; having derived revenue from conducting business in Delaware; having engaged in systematic and continuous contacts with the State of Delaware; previously consenting to personal jurisdiction in this Court (*see, e.g., Aker BioMarine Antarctic AS v. Olympic*

*Holding AS et al,* 1:16-cv-00035 (D. Del. Jan 22, 2016)); and having taken advantage of the rights and protections provided by this Court, including having asserted claims in this jurisdiction (*see, e.g., Aker BioMarine Antarctic AS v. Olympic Holding AS et al,* 1:16-cv-00035 (D. Del. Jan 22, 2016)). Additionally, on information and belief, Aker, itself and through its affiliates and service providers, develops, manufactures, imports, markets, distributes, tests, uses, offers to sell, and/or sells its products and services related to krill oil throughout the United States, including in the District of Delaware, and therefore transacts business within the District of Delaware, and/or has engaged in systematic and continuous business contacts within the District of Delaware.

22.    Upon information and belief, the Aker entities are agents and/or alter egos of each other and are acting in concert with each other as a "Group" with respect to the making, using, selling, and offering for sale of krill oil products in the United States and in Delaware.

23.    This Court further has personal jurisdiction over Aker for other reasons that will be presented to the Court if jurisdiction is challenged.

24.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Aker is subject to personal jurisdiction in this district, engages in business in this district, and has placed infringing products into the stream

of commerce by shipping products into this district (and/or knowing that the products would be shipped into this district).

25.    Venue is also proper in this district with respect to Aker for the same reasons that personal jurisdiction over Aker is proper in this district, as set forth above, including because Aker has committed acts of infringement in this district, and, upon information and belief, Aker will commit further acts of infringement in this district and, upon information and belief, has a regular and established place of business in this district.

26.    Venue is also proper in this district with respect to Defendants Aker BioMarine Antarctic US LLC, Aker BioMarine Manufacturing LLC, Aker BioMarine US Holding Inc., and NewRide LLC because these defendants reside in this district.

27.    Venue is also proper in this district with respect to Defendant Aker BioMarine ASA under the provisions of 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b) because, on information and belief, Aker BioMarine ASA is a company organized and existing under the laws of Norway and may be sued in any judicial district.

28.    Further, venue is proper with respect to Aker for other reasons that will be presented to the Court if venue is challenged.

## THE PATENTS-IN-SUIT

29.    The allegations above are incorporated herein by reference.

30.    U.S. Patent No. 9,814,256, titled "Method for Processing Crustaceans to Produce Low Fluoride/Low Trimethyl Amine Products Thereof," is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code by the United States Patent and Trademark Office ("USPTO") on November 14, 2017. The '256 patent issued from U.S. Patent Application No. 14/370,324, which is a national stage entry of International Patent Application No. PCT/IB2012/003004, filed December 21, 2012, and a continuation-in-part of U.S. Patent Application No. 13/342,664, filed on January 3, 2012, now U.S. Patent No. 8,557,297, which is a continuation-in-part of U.S. Application No. 13/063,488, filed as International Patent Application No. PCT/NO2009/000322 on September 14, 2009, now U.S. Patent No. 8,758,829. On January 13, 2025, *Ex Parte* Reexamination Request No. 90/019,810 was filed. On September 17, 2025, the USPTO issued a *Ex Parte* Reexamination Certificate confirming the patentability of claims 1–9, determining claims 10–14 to be patentable as amended, and adding a new and patentable claim 15. A true and correct copy of the '256 patent and *Ex Parte* Reexamination Certificate is attached to this Complaint as **Exhibit B**.

31.    The '256 patent names Inge Bruheim, Mikko Griinari, Jon Reidar Ervik, Stig Rune Remoy, Even Remoy, and John Cameron as inventors. Rimfrost

Technologies AS is the assignee of record and is the owner by assignment of all rights, title, and interest in the '256 patent. Rimfrost Technologies AS has the right to enforce the '256 patent and sue for infringement thereof.

32.    Representative claim 1 of the '256 patent recites:

A krill oil composition comprising a clear red color, phospholipids, less than 1 mg N/100g trimethyl amine and less than approximately 0.02% (w/w) trimethyl amine oxide.

33.    U.S. Patent No. 10,499,673, titled "Method for Processing Crustaceans to Produce Low Fluoride/Low Trimethyl Amine Products Thereof," is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code by the USPTO on December 10, 2019. The '673 patent issued from U.S. Patent Application No. 15/171,886, filed June 2, 2016, which is a continuation of U.S. Patent Application No. 14/370,324, filed as International Patent Application No. PCT/IB2012/003004 on December 21, 2012, now U.S. Patent No. 9,814,256, which is a continuation-in-part of U.S. Patent Application No. 13/342,664, filed on January 3, 2012, now U.S. Patent No. 8,557,297, which is a continuation-in-part of U.S. Patent Application No. 13/063,488, filed as International Patent Application No. PCT/NO2009/000322 on September 14, 2009, now U.S. Patent No. 8,758,829. A true and correct copy of the '673 patent is attached to this Complaint as **Exhibit C**.

34.    The '673 patent names Inge Bruheim, Stig Rune Remoy, and John Cameron as inventors. Rimfrost Technologies AS is the assignee of record and is the

owner by assignment of all rights, title, and interest in the '673 patent. Rimfrost Technologies AS has the right to enforce the '673 patent and sue for infringement thereof.

35.    Representative claim 17 of the '673 patent recites:

An extracted crustacean oil comprising at least 40 wt % total phospho-lipids and less than 20 mg N-trimethylamine oxide/100 g of said crus-tacean oil and less than 1 mg N-trimethylamine/100 g of said crustacean oil, wherein said total phospholipids comprise at least 75 wt % phos-phatidylcholine and at least 2% phosphatidylethanolamine of the total phospholipids.

## FACTUAL ALLEGATIONS AND BACKGROUND

36.    Rimfrost, together with its related entities, is a Norwegian biotech com-pany that produces sustainable high quality krill products for human health and ani-mal nutrition. Rimfrost, together with its related entities, uses its patented enzymatic hydrolysis technology to process krill offshore immediately after harvesting to pro-duce a krill product that is rich in the marine omega-3 fatty acids docosahexaenoic acid (DHA) and eicosapentaenoic acid (EPA) and the powerful antioxidant, astaxan-thin. This world-leading innovation means Rimfrost takes better care of krill nutri-ents and uses 30% less krill than most other companies, helping to guarantee the sustainability of Rimfrost krill products.

37.    Aker describes itself as "the only krill supplier that controls the entire harvesting and production process." *Our Operations*, AKER BIOMARINE, https://www.akerbiomarine.com/operations (last visited Dec. 17, 2025) (**Ex. D**). On

information and belief, Aker's supply chain begins with harvesting krill in Antarctic waters. Aker's wholly owned vessel *Antarctic Provider* delivers its krill products to a logistics hub in Montevideo, Uruguay. From Montevideo, Aker's krill products are transported to Houston, Texas, for further processing and sale, or sold directly to worldwide customers. *Id*.; Hank Schultz, *Aker Hits High Gear in Krill Oil Innovation with Mature Houston Facility*, SUPPLYSIDE SUPPLEMENT JOURNAL (Mar. 11, 2024), https://www.supplysidesj.com/supplements/aker-hits-high-gear-in-krill-oil-innovation-with-mature-houston-facility (**Ex. E).**

38.     Aker "is present all over the world from Australia to the US," and maintains at least two United States-based locations, as indicated in the graphic below.



Aker BioMarine Annual Report 2024 at 7 (**Ex. A).**

39.     Aker claims responsibility for more than "70% of global krill oil production" at its "[p]urpose built oil extraction plant in Houston, TX." *Id.* at 11.

40.     On information and belief, Aker manufactures, offers for sale, and sells its Superba2®, Superba Boost®, and Superba SC40™ krill oils (collectively, "Superba™ krill oil") in the United States. *See, e.g.*, SUPERBAKRILL®, https://www.superbakrill.com/ (last visited Dec. 17, 2025) (**Ex. F**); *Superior Krill Oil Products From Antarctica*, SUPERBAKRILL®, https://www.superbakrill.com/products (last visited Dec. 17, 2025) (**Ex. G**); *Halal Krill Oil*, SUPERBAKRILL®, https://www.superbakrill.com/halal-krill-oil (last visited Dec. 17, 2025) (**Ex. H**). On information and belief, Aker supplies its Superba™ krill oil to various entities worldwide and for incorporation into private label products that are marketed and sold in the United States. These private label products include, without limitation, CVS Health Corporation's ("CVS") CVS Health® Antarctic Pure Krill Oil Omega-3 ("CVS krill oil"), the Schiff Vitamins ("Schiff") product Schiff MegaRed® Superior Omega-3 Krill Oil ("MegaRed krill oil"), Purasana N.V.'s ("Purasana") Superba Boost™ Krill Olie ("Purasana krill oil") and California Gold Nutrition's ("California Gold") Premium Krill Oil ("California Gold krill oil"). On information and belief, CVS krill oil and MegaRed krill oil are formulated with Superba2®, Purasana krill oil is formulated with Superba Boost®, and California Gold krill oil is available formulated with either Superba2® or Superba Boost®. These products, including Aker's Superba™ krill oil generally, and any product that incorporates Aker's Superba™ krill oil, are collectively referred to in this Complaint as the "Accused Products."

41.    **Phospholipids.** On information and belief, the Accused Products comprise or include krill oil comprising phospholipids. For example, Aker describes its Superba™ krill oil as comprising "essential omega-3 (EPA & DHA), choline, phospholipids and astaxanthin." SUPERBAKRILL®, https://www.superbakrill.com/ (last visited Dec. 17, 2025) (**Ex. F**). Similarly, the ingredient list for a representative CVS krill oil product includes "Phospholipids: 130 mg," and the product packaging explains that it contains "Phospholipids for Easy Absorption" (see below).



*CVS  Antarctic  Krill  Oil  Omega-3  Softgels*, CVS PHARMACY, https://www.cvs.com/shop/cvs-antarctic-krill-oil-omega-3-softgels-60-ct-prodid-717912 (last visited Dec. 17, 2025) (**Ex. I**). Likewise, the Supplement Facts listed

on the packaging of a representative MegaRed krill oil product shows that the product includes 130 mg of phospholipids. Elsewhere, the product packaging explains that the krill oil product "carries its Omega-3 in a **phospholipid** form which **helps absorption** in the human body" (see below).



*MegaRed 350mg Superior Omega-3 Krill Oil Softgels*, SCHIFF, https://www.schiffvitamins.com/collections/omega-3-fish-oil-supplements/products/megared-350mg-omega3-krill-oil (last visited Dec. 17, 2025) (**Ex. J**) (emphasis in original). The packaging for a representative Purasana krill oil product also lists phospholipids as an ingredient (see below, "fosfolipiden" in Dutch).



*Krill Oil 500 mg 60 Caps*, Purasana, https://purasana.com/en/krill-oil (last visited Dec. 20, 2025) (**Ex. K**). And the packaging for a representative California Gold krill oil product also lists phospholipids as an ingredient (see below).



*California Gold Nutrition, Premium Krill Oil with SUPERBABoost, 1,000 mg, 60 Fish Gelatin Softgels*, IHERB, https://www.iherb.com/pr/california-gold-nutrition-premium-krill-oil-with-superbaboost-1-000-mg-60-fish-gelatin-softgels/100010 (last visited Dec. 17, 2025) (**Ex. L**).

42.    **At Least 40 wt % Total Phospholipids.** On information and belief, at least the Purasana krill oil and California Gold krill oil products comprise extracted crustacean oil comprising at least 40 wt % total phospholipids. For example, the packaging for a representative Purasana krill oil product lists 330 mg phospholipids per capsule and 1180 mg Superba Boost™ krill oil per 2 capsules as ingredients (see

below). 1180 mg / 2 = 590 mg Superba Boost™ krill oil per capsule. 330 mg phospholipids per capsule / 590 mg krill oil per capsule = 56% phospholipids by weight.



*Krill Oil 500 mg 60 Caps*, Purasana, https://purasana.com/en/krill-oil (last visited Dec. 20, 2025) (**Ex. K**). And the packaging for a representative California Gold krill oil product lists 560 mg phospholipids per 1000 mg Superba Boost® krill oil concentrate as an ingredient (see below). 560 mg / 1000 mg = 56% by weight.




*California Gold Nutrition, Premium Krill Oil with SUPERBABoost, 1,000 mg, 60 Fish Gelatin Softgels*, IHERB, https://www.iherb.com/pr/california-gold-nutrition-premium-krill-oil-with-superbaboost-1-000-mg-60-fish-gelatin-softgels/100010 (last visited Dec. 17, 2025) (**Ex. L**). Additionally, Aker's own Superba Boost® krill oil laboratory analysis, submitted to the European Patent Office, (attached as **Exhibit M**), shows 57 g phospholipids per 100 g Superba Boost® krill oil (see below). 57 g / 100 g = 57% by weight.

**CERTIFICATE OF ANALYSIS**

**IDENTIFICATION:**

- Product name: SUPERBA Boost® - 25 kg
- Product number: 72031011
- Batch number: A103352
- Manufacturing date: 25/JUN/2023
- Shelf life / retest date: 24/JUN/2025
- Country of origin: United States of America
- Manufacturing site: Aker BioMarine Manufacturing L.L.C. , 4494 Campbell Road, Houston, TX 77041, US
- Harvesting position: 62º37S 55º16W

**ANALYTICAL SPECIFICATION:**

| PARAMETER | METHOD/INSTRUMENT | ACTUAL VALUE | LIMIT | UNIT |
|---|---|---|---|---|
| **PHYSICAL / CHEMICAL** | | | | |
| Appearance | Visual | Red viscous oil | Red viscous oil | |
| Identification | AKBM-AM-02 | Conforms | Conforms | |
| Viscosity at 35°C | Rotational viscometer | 1858 | <=2000 | mPa·s |
| TMA + TMAO | IC / Conway | <2 | Report value | mgN/100 g |
| Salts | IC | <0.1 | <=0.5 | g/100 g |
| Total phospholipids | $^{31}$P NMR | 57 | >=56 | g/100 g |
| Phosphatidylcholines | 1) $^{31}$P NMR | 54 | >=48 | g/100 g |

Certificate of Analysis at 1 (**Ex. M**). This Certificate of Analysis also lists Aker's own internal, quality-control, specification limits for Superba Boost® krill oil. Aker requires at least 56 g total phospholipids per 100 g Superba Boost® krill oil. Certificate of Analysis at 1 (**Ex. M**, Limit column**)**. 56 g / 100 g = 56% by weight. With 56% total phospholipids, both Purasana krill oil and California Gold krill oil meet this specification. Additionally, another Aker Superba Boost® krill oil laboratory analysis, included in U.S. Patent Application 18/381,439, and published on May 16, 2024 as U.S. Patent Application Publication No. 2024/0156876, (attached as **Exhibit N**), shows 58 g phospholipids per 100 g Superba Boost® krill oil (see below). 58 g / 100 g = 58% by weight.

| TABLE 3 | | | |
|---|---|---|---|
| Superba Boost ® Specification | | | |
| Parameter | Method | Actual Value | Unit |
| Appearance | Visual | Red viscous oil | |
| Identification | GC-FAME | Conforms | |
| TMA + TMAO | Conway | <2 | mgN/100 g |
| Salts | IPC/IC | 0.1 | g/100 g |
| Total phospholipids | 31P NMR | 58 | g/100 g |
| Phosphatidylcholine | 31P NMR | 52 | g/100 g |
| Choline | 31P NMR | 7 | g/100 g |
| Total Omega-3 fatty acids | AKBM-AM-02 | 31 | g/100 g |
| EPA | AKBM-AM-02 | 16 | g/100 g |
| DHA | AKBM-AM-02 | 9 | g/100 g |
| Peroxide value | AOCS Cd 8b-90 | 3 | g/100 g |
| Astaxanthin | FCC/USP-NF (UV) | 200 | μg/g |
| Astaxanthin esterification (ID) | LC | Conforms | |

U.S. Pat. App. Pub. No. 2024/0156876 at 14, Table 3 (**Ex. N**). Additionally, another

Aker Superba Boost® krill oil laboratory analysis, performed via nuclear magnetic

resonance, included in International Patent Application No. PCT/IB2023/056584,

and published on January 4, 2024 as WO 2024/003711, (attached as **Exhibit O**),

shows 58.54 g phospholipids per 100 g Superba Boost® krill oil (see below). 58.54

g / 100 g = 58.54% by weight.

| Batch Size | | | Superba Boost | Lysoveta |
|---|---|---|---|---|
| Parameter | Method description | Unit | | |
| Appearance | Visual | | Red viscous oil | Red viscous oil |
| Identification | GC FAME | | Conforms | Conforms |
| Viscosity at 35°C | Rotational Viscometer | | 1937,44 | 769,4 |
| TMAO+TMAO | Ion chromatography | mgN/100g | <2 | <6,67 |
| Na+ (g/100g) | Ion chromatography | g/100g | 0,137 | |
| LIPID COMPOSITION | | | | |
| Total phospholipids | 31P NMR | g/100g | 58,54 | 43,87 |
| PC | 31P NMR | g/100g | 47,78 | 8,37 |

WO 2024/003711 at 29, Table 1 (**Ex. O**).

43. **Clear Red Color.** On information and belief, at least the CVS krill oil and MegaRed krill oil products comprise a clear red color. *See, e.g.*, *What is Krill Oil?*, SUPERBAKRILL®, available at https://www.superbakrill.com/krill-oil/what-is-krill-oil (last visited Dec. 17, 2025) (**Ex. P**) (explaining that astaxanthin in Superba™ krill oil "gives krill oil its beautiful red color"); photos of representative Accused Products (see below).

| Representative Accused Product | Photo |
|---|---|
| Superba™ krill oil[1] |  |

| Representative Accused Product | Photo |
|---|---|
| CVS krill oil[2] |  |
| MegaRed krill oil[3] |  |

44. **TMA and TMAO.** On information and belief, at least the MegaRed krill oil, CVS krill oil, Purasana krill oil, and California Gold krill oil Accused Products comprise less than 1 mg N/100g trimethyl amine ("TMA") and less than 20 mg N/100g or 0.02% (w/w) trimethyl amine oxide ("TMAO"). On information and belief, Aker uses a method of processing that removes TMA and TMAO from its Superba™ krill oil. *See, e.g.,* Lena Burri, *Krill Oil Concentrate* at 13 (**Ex. Q**) (explaining that Aker's Flexitech™ ion-exchange technology "reduces the TMA/TMAO (an

---

[2] *CVS Antarctic Krill Oil Omega-3 Softgels*, CVS PHARMACY, https://www.cvs.com/shop/cvs-antarctic-krill-oil-omega-3-softgels-60-ct-prodid-717912 (last visited Dec. 17, 2025) (**Ex. I**).
[3] *MegaRed 350mg Superior Omega-3 Krill Oil Softgels*, SCHIFF, https://www.schiffvitamins.com/collections/omega-3-fish-oil-supplements/products/megared-350mg-omega3-krill-oil (last visited Dec. 17, 2025) (**Ex. J**).

osmolyte and protein stabilizer) and the salt content of the oil," resulting in "a product with a concentrated amount of omega-3 fatty acids, phospholipids, and astaxanthin, which is almost taste- and smell-free"); WholeFoods Magazine Staff, *Krill Oil Formulators See New Tech from Aker BioMarine*, WHOLEFOODS MAGAZINE (Mar. 24, 2016), https://www.wholefoodsmagazine.com/articles/7814-krill-oil-formulators-see-new-tech-from-aker-biomarine (**Ex. R**) ("Aker says the new technology will allow it to bump up levels of certain desirable krill oil components (like phospholipids, astaxanthin and omega-3s) while stripping the oil of the salts (like trimethylamine N-oxide) that give the oil an unwanted 'fishy' odor and taste."). For example, the packaging for a representative CVS krill oil product explains that "salts (including TMAO responsible for 'fishy' odor) are removed from Superba2® krill oil" (see below).



*CVS Antarctic Krill Oil Omega-3 Softgels*, CVS Pharmacy, https://www.cvs.com/shop/cvs-antarctic-krill-oil-omega-3-softgels-60-ct-prodid-717912 (last visited Dec. 17, 2025), (**Ex. I**). Likewise, Aker's own Superba Boost® krill oil laboratory analysis, submitted to the European Patent Office, (attached as **Exhibit M**), reports less than 2 mgN/100g for TMA and TMAO combined for Superba Boost® krill oil (see below). Less than 2 mgN / 100 g = less than 0.02% (w/w).

## CERTIFICATE OF ANALYSIS

**IDENTIFICATION:**

- Product name:          SUPERBA Boost® - 25 kg
- Product number:        72031011
- Batch number:          A103352
- Manufacturing date:    25/JUN/2023
- Shelf life / retest date: 24/JUN/2025
- Country of origin:     United States of America
- Manufacturing site:    Aker BioMarine Manufacturing L.L.C. , 4494 Campbell Road, Houston, TX 77041, US
- Harvesting position:   62º37S 55º16W

**ANALYTICAL SPECIFICATION:**

| PARAMETER | METHOD/INSTRUMENT | ACTUAL VALUE | LIMIT | UNIT |
|---|---|---|---|---|
| **PHYSICAL / CHEMICAL** | | | | |
| Appearance | Visual | Red viscous oil | Red viscous oil | |
| Identification | AKBM-AM-02 | Conforms | Conforms | |
| Viscosity at 35°C | Rotational viscometer | 1858 | <=2000 | mPa·s |
| TMA + TMAO | IC / Conway | <2 | Report value | mgN/100 g |
| Salts | IC | <0.1 | <=0.5 | g/100 g |
| Total phospholipids | ³¹P NMR | 57 | >=56 | g/100 g |
| Phosphatidylcholines  1) | ³¹P NMR | 54 | >=48 | g/100 g |

Certificate of Analysis at 1 (**Ex. M**). Additionally, another Aker Superba Boost®
krill oil laboratory analysis, included in U.S. Patent Application 18/381,439, and
published on May 16, 2024 as U.S. Patent Application Publication No.
2024/0156876, (attached as **Exhibit N**), shows less than 2 mgN/100g for TMA and
TMAO combined for Superba Boost® krill oil (see below). Less than 2 mgN / 100 g
= less than 0.02% (w/w).

## TABLE 3

Superba Boost ® Specification

| Parameter | Method | Actual Value | Unit |
|---|---|---|---|
| Appearance | Visual | Red viscous oil | |
| Identification | GC-FAME | Conforms | |
| TMA + TMAO | Conway | <2 | mgN/100 g |
| Salts | IPC/IC | 0.1 | g/100 g |
| Total phospholipids | 31P NMR | 58 | g/100 g |
| Phosphatidylcholine | 31P NMR | 52 | g/100 g |
| Choline | 31P NMR | 7 | g/100 g |
| Total Omega-3 fatty acids | AKBM-AM-02 | 31 | g/100 g |
| EPA | AKBM-AM-02 | 16 | g/100 g |
| DHA | AKBM-AM-02 | 9 | g/100 g |
| Peroxide value | AOCS Cd 8b-90 | 3 | g/100 g |
| Astaxanthin | FCC/USP-NF (UV) | 200 | µg/g |
| Astaxanthin esterification (ID) | LC | Conforms | |

U.S. Pat. App. Pub. No. 2024/0156876 at 14, Table 3 (**Ex. N**). Additionally, another Aker Superba Boost® krill oil laboratory analysis, included in International Patent Application No. PCT/IB2023/056584, and published on January 4, 2024 as WO 2024/003711, (attached as **Exhibit O**), shows less than 2 mgN/100g for TMA and TMAO combined for Superba Boost® krill oil (see below). Less than 2 mgN / 100 g = less than 0.02% (w/w).

| Batch Size | | | Superba Boost | Lysoveta |
|---|---|---|---|---|
| **Parameter** | **Method description** | **Unit** | | |
| Appearance | Visual | | Red viscous oil | Red viscous oil |
| Identification | GC FAME | | Conforms | Conforms |
| Viscosity at 35°C | Rotational Viscometer | | 1937,44 | 769,4 |
| TMAO+TMAO | Ion chromatography | mgN/100g | <2 | <6,67 |
| Na+ (g/100g) | Ion chromatography | g/100g | 0,137 | |
| **LIPID COMPOSITION** | | | | |
| Total phospholipids | 31P NMR | g/100g | 58,54 | 43,87 |
| PC | 31P NMR | g/100g | 47,78 | 8,37 |

WO 2024/003711 at 29, Table 1 (**Ex. O**). Additionally, an analysis performed by an external laboratory confirms that tested representative Superba2® Accused Products, MegaRed krill oil and CVS krill oil, contain less than 1 mg N/100g TMA as well as less than 0.02% (w/w) TMAO. And an analysis performed by an external laboratory of a representative Superba Boost® product, Purasana krill oil, shows it also contains less than 1 mg N/100g TMA as well as less than 0.02% (w/w) TMAO.

45.     **Phosphatidylcholine and Phosphatidylethanolamine.** On infor-mation and belief, at least the Purasana krill oil and California Gold krill oil Accused Products comprise at least 40 wt % total phospholipids (see above), wherein the total phospholipids comprise at least 75 wt % phosphatidylcholine and at least 2% phos-phatidylethanolamine of the total phospholipids. For example, Aker's own Superba Boost® krill oil laboratory analysis, submitted to the European Patent Office (at-tached as **Exhibit M**), shows 57 g total phospholipids and 54 g phosphatidylcholines

per 100 g Superba Boost® krill oil (see below). 54 g / 57 g = 95% by weight phos-

phatidylcholines in the total phospholipids.

### CERTIFICATE OF ANALYSIS

**IDENTIFICATION:**

- Product name: SUPERBA Boost® - 25 kg
- Product number: 72031011
- Batch number: A103352
- Manufacturing date: 25/JUN/2023
- Shelf life / retest date: 24/JUN/2025
- Country of origin: United States of America
- Manufacturing site: Aker BioMarine Manufacturing L.L.C. , 4494 Campbell Road, Houston, TX 77041, US
- Harvesting position: 62º37S 55º16W

**ANALYTICAL SPECIFICATION:**

| PARAMETER | METHOD/INSTRUMENT | ACTUAL VALUE | LIMIT | UNIT |
|---|---|---|---|---|
| PHYSICAL / CHEMICAL | | | | |
| Appearance | Visual | Red viscous oil | Red viscous oil | |
| Identification | AKBM-AM-02 | Conforms | Conforms | |
| Viscosity at 35°C | Rotational viscometer | 1858 | <=2000 | mPa·s |
| TMA + TMAO | IC / Conway | <2 | Report value | mgN/100 g |
| Salts | IC | <0.1 | <=0.5 | g/100 g |
| Total phospholipids | $^{31}$P NMR | 57 | >=56 | g/100 g |
| Phosphatidylcholines | 1) $^{31}$P NMR | 54 | >=48 | g/100 g |

Certificate of Analysis at 1 (**Ex. M**). Additionally, another Aker Superba Boost®

krill oil laboratory analysis, included in U.S. Patent Application 18/381,439 and pub-

lished on May 16, 2024 as U.S. Patent Application Publication No. 2024/0156876,

(attached as **Exhibit N**), shows 58 g total phospholipids and 52 g phosphatidylcho-

lines per 100 g Superba Boost® krill oil (see below). 52 g / 58 g = 90% by weight

phosphatidylcholines in the total phospholipids.

## TABLE 3

Superba Boost ® Specification

| Parameter | Method | Actual Value | Unit |
|---|---|---|---|
| Appearance | Visual | Red viscous oil | |
| Identification | GC-FAME | Conforms | |
| TMA + TMAO | Conway | <2 | mgN/100 g |
| Salts | IPC/IC | 0.1 | g/100 g |
| Total phospholipids | 31P NMR | 58 | g/100 g |
| Phosphatidylcholine | 31P NMR | 52 | g/100 g |
| Choline | 31P NMR | 7 | g/100 g |
| Total Omega-3 fatty acids | AKBM-AM-02 | 31 | g/100 g |
| EPA | AKBM-AM-02 | 16 | g/100 g |
| DHA | AKBM-AM-02 | 9 | g/100 g |
| Peroxide value | AOCS Cd 8b-90 | 3 | g/100 g |
| Astaxanthin | FCC/USP-NF (UV) | 200 | μg/g |
| Astaxanthin esterification (ID) | LC | Conforms | |

U.S. Pat. App. Pub. No. 2024/0156876 at 14, Table 3 (**Ex. N**). Additionally, another

Aker Superba Boost® krill oil laboratory analysis, performed via nuclear magnetic

resonance, included in International Patent Application No. PCT/IB2023/056584,

and published on January 4, 2024 as WO 2024/003711, (attached as **Exhibit O**),

shows 58.54 g total phospholipids and 47.78 g phosphatidylcholines ("PC") per 100

g Superba Boost® krill oil (see below). 47.78 g / 58.54 g = 81.62% by weight phos-

phatidylcholines in the total phospholipids.

| Batch Size | | | Superba Boost | Lysoveta |
|---|---|---|---|---|
| **Parameter** | **Method description** | **Unit** | | |
| Appearance | Visual | | Red viscous oil | Red viscous oil |
| Identification | GC FAME | | Conforms | Conforms |
| Viscosity at 35°C | Rotational Viscometer | | 1937,44 | 769,4 |
| TMAO+TMAO | Ion chromatography | mgN/100g | <2 | <6,67 |
| Na+ (g/100g) | Ion chromatography | g/100g | 0,137 | |
| **LIPID COMPOSITION** | | | | |
| Total phospholipids | 31P NMR | g/100g | 58,54 | 43,87 |
| PC | 31P NMR | g/100g | 47,78 | 8,37 |

WO 2024/003711 at 29, Table 1 (**Ex. O**). Additionally, a third-party, high-performance liquid chromatography analysis of Superba Boost® krill oil was published in MARINE DRUGS on July 27, 2022 (attached as **Exhibit S**).[4] The authors analyzed Superba Boost® krill oil produced by Aker Biomarine at its Houston, Texas, plant, and found 51.2% (w/w) phospholipids comprising 44.9% phosphatidylcholine and 2.1% phosphatidylethanolamine. 44.9% / 51.2% = 87.7% by weight phosphatidylcholine in the total phospholipids. 2.1% / 51.2% = 4.1% by weight phosphatidylethanolamine in the total phospholipids.

46.    On information and belief, the Accused Products are manufactured in the United States, namely at Aker's Houston, Texas, production plant.

47.    On information and belief, the Accused Products are offered for sale and sold in the United States, including in this district, and worldwide. In 2024,

---

[4] Seung-Min Hwang, et al., *Preventive and Therapeutic Effects of Krill Oil on Obesity and Obesity-Induced Metabolic Syndromes in High-Fat Diet-Fed Mice*, 20 Marine Drugs 1, 12–13 (2022) (available at https://doi.org/10.3390/md20080483) (**Ex. S**).

Aker's Human Health Ingredients segment, "dedicated to developing and supplying krill and algae-based ingredients for dietary supplements" and whose product portfolio includes "Superba Krill Oil, a phospholipid-bound omega-3 supplement," delivered strong growth in the United States. Aker BioMarine Annual Report 2024 at 46 (**Ex. A**). Superba krill oil sales increased 15% year-over-year with the Human Health Ingredients segment growing to $98.0 million in revenue. *Id.*

48.     On information and belief, at least the CVS krill oil and MegaRed krill oil products comprise a krill oil composition comprising a clear red color, phospholipids, less than 1 mg N/100g TMA and less than approximately 0.02% (w/w) TMAO, and thus infringe at least claim 1 of the '256 patent.

49.     On information and belief, at least the Purasana krill oil and California Gold krill oil products comprise an extracted crustacean oil comprising at least 40 wt % total phospholipids, less than 20 mg N-trimethylamine oxide/100g of the crustacean oil and less than 1 mg N-trimethylamine/100 g of the crustacean oil, wherein the total phospholipids comprise at least 75 wt % phosphatidylcholine and at least 2% phosphatidylethanolamine of the total phospholipids, and thus infringe at least claim 17 of the '673 patent.

50.     On information and belief, Aker, through its sales, manufacturing, and processing operations related to the Accused Products, has willfully infringed, literally or through the doctrine of equivalents, and continues to willfully infringe,

literally or through the doctrine of equivalents, and to induce others to infringe, and/or contributorily infringe the Patents-in-Suit.

## COUNT I

### Patent Infringement of U.S. Patent No. 9,814,256

51.    The allegations above are incorporated herein by reference.

52.    Aker has knowledge of the '256 patent as demonstrated by at least its claimed analysis of the patent and its filing of *Ex Parte* Reexamination Request No. 90/019,810. *See generally* Matthew Wilcox, *Aker Move Sparks New Chapter in Decade-Long Krill War*, SALMONBUSINESS (Jan. 10, 2025), https://www.salmon-business.com/aker-move-sparks-new-chapter-in-decade-long-krill-war/   **(Ex.   T).** Aker thus has knowledge of its infringement of the '256 patent.

53.    Aker has at no time been licensed under the '256 patent.

54.    Aker has directly infringed, and is currently directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '256 patent, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering to sell in the United States, and/or importing into the United States infringing products, including without limitation the Accused Products.

55.    By way of example, at least the CVS krill oil and MegaRed krill oil products infringe at least claim 1 of the '256 patent.

56.     On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises a krill oil composition. *See supra* ¶ 40.

57.     On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises a clear red color. *See supra* ¶ 43.

58.     On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises phospholipids. *See supra* ¶ 41.

59.     On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises a krill oil composition with less than 1 mg N/100g TMA and less than approximately 0.02% (w/w) TMAO. *See supra* ¶ 44.

60.     The claim charts attached hereto as **Exhibits U and V** identify on a limitation-by-limitation basis where each limitation of claim 1 of the '256 patent is found within the CVS krill oil and MegaRed krill oil products, respectively.

61.     Aker induces infringement of the '256 patent, in violation of 35 U.S.C. § 271(b). Aker has knowledge of the '256 patent. Aker instructs and induces its customers, e.g., CVS and MegaRed, to directly infringe the '256 patent. Aker has known or should have known that its acts would cause its customers to infringe the '256 patent.

62.     On information and belief, Aker contributorily infringes the '256 patent, in violation of 35 U.S.C. § 271(c). Aker has knowledge of the '256 patent. Aker has sold or supplied components (e.g., Superba™ krill oil) that form a significant

part of the invention described in the '256 patent. On information and belief, Aker knows that the Superba™ krill oil is specially made or adapted for use in infringing the '256 patent, that Superba™ krill oil is not a staple article or commodity of commerce, and that Superba™ krill oil is not suitable for substantial noninfringing use.

63.    Aker's infringement of the '256 patent has been willful.

64.    As a direct and proximate result of Aker's willful infringement of the '256 patent, Rimfrost has been and will continue to be irreparably damaged and deprived of its rights in the '256 patent in amounts not yet determined, and for which Rimfrost is entitled to relief.

65.    On information and belief, Aker has acted with full knowledge of the '256 patent and without a reasonable basis for believing that Aker would not be liable for direct infringement, active inducement of infringement, and/or contribution to the infringement by others of the '256 patent. On information and belief, the direct and indirect infringement by Aker of the '256 patent was and is willful. Aker's conduct renders this case "exceptional" under 35 U.S.C. § 285.

66.    Rimfrost has been and will be substantially and irreparably damaged by Aker's infringement of the '256 patent. Unless Aker is enjoined from directly infringing, actively inducing infringement of, and contributing to the infringement of the '256 patent, Rimfrost will suffer irreparable injury. Rimfrost has no adequate remedy at law and considering the balance of hardships between Rimfrost and Aker,

a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT II

### Patent Infringement of U.S. Patent No. 10,499,673

67.     The allegations above are incorporated herein by reference.

68.     On information and belief, Aker has knowledge of the '673 patent. This is evident from its analysis of the parent '256 patent and its filing of *Ex Parte* Reexamination Request No. 90/019,810 for the '256 patent. Aker has analyzed the '256 patent family of which the '673 patent is a member. *See generally* Matthew Wilcox, *Aker Move Sparks New Chapter in Decade-Long Krill War*, SALMONBUSINESS (Jan. 10, 2025), https://www.salmonbusiness.com/aker-move-sparks-new-chapter-in-decade-long-krill-war/) (reporting "numerous legal battles over patents" between Aker and Rimfrost) (**Ex. T).** It is reasonable to infer that Aker has knowledge of the '673 patent and its infringement.

69.     Aker has at no time been licensed under the '673 patent.

70.     Aker has directly infringed, and is currently directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '673 patent, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering to sell in the United States, and/or importing into the United States infringing products, including without limitation the Purasana krill oil and California Gold krill oil products.

71.    By way of example, at least the Purasana krill oil and California Gold krill oil products infringe at least claim 17 of the '673 patent.

72.    On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises an extracted crustacean oil composition. *See supra* ¶ 40.

73.    On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises at least 40 wt % total phospholipids. *See supra* ¶ 42.

74.    On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises less than 20 mg N-trimethylamine oxide/100g of the crustacean oil and less than 1 mg N-trimethylamine/100 g of the crustacean oil. *See supra* ¶ 44.

75.    On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises total phospholipids that comprise at least 75 wt % phosphatidylcholine and at least 2% phosphatidylethanolamine of the total phospholipids. *See supra* ¶ 45.

76.    The claim charts attached hereto as **Exhibits W and X** identify on a limitation-by-limitation basis where each limitation of claim 17 of the '673 patent is found within the Purasana krill oil and California Gold krill oil products, respectively.

77.    On information and belief, Aker induces infringement of the '673 patent, in violation of 35 U.S.C. § 271(b). On information and belief, Aker has knowledge of the '673 patent. Aker instructs and induces its customers, e.g., Purasana and California Gold, to directly infringe the '673 patent. Aker has known or should have known that its acts would cause its customers to infringe the '673 patent.

78.    On information and belief, Aker contributorily infringes the '673 patent, in violation of 35 U.S.C. § 271(c). On information and belief, Aker has knowledge of the '673 patent. Aker has sold or supplied components (e.g., Superba™ krill oil) that form a significant part of the invention described in the '673 patent. On information and belief, Aker knows that the Superba™ krill oil is specially made or adapted for use in infringing the '673 patent, that Superba™ krill oil is not a staple article or commodity of commerce, and that Superba™ krill oil is not suitable for substantial noninfringing use.

79.    On information and belief, Aker's infringement of the '673 patent has been willful.

80.    As a direct and proximate result of Aker's willful infringement of the '673 patent, Rimfrost has been and will continue to be irreparably damaged and deprived of its rights in the '673 patent in amounts not yet determined, and for which Rimfrost is entitled to relief.

81.    On information and belief, Aker has acted with full knowledge of the '673 patent and without a reasonable basis for believing that Aker would not be liable for direct infringement, active inducement of infringement, and/or contribution to the infringement by others of the '673 patent. On information and belief, the direct and indirect infringement by Aker of the '673 patent was and is willful. Aker's conduct renders this case "exceptional" under 35 U.S.C. § 285.

82.    Rimfrost has been and will be substantially and irreparably damaged by Aker's infringement of the '673 patent. Unless Aker is enjoined from directly infringing, actively inducing infringement of, and contributing to the infringement of the '673 patent, Rimfrost will suffer irreparable injury. Rimfrost has no adequate remedy at law and considering the balance of hardships between Rimfrost and Aker, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Rimfrost respectfully requests that this Court enter judgment in its favor against Aker and grant the following relief:

A.    An adjudication that Aker has infringed one or more claims of the '256 patent, and such infringement has been willful;

B.    An adjudication that Aker has infringed one or more claims of the '673 patent, and such infringement has been willful;

C.     A permanent injunction enjoining Aker, its officers, directors, employees, agents, subsidiaries, licensees, servants, successors and assignees, and any and all persons acting in privity or in concert or participation with Aker, from further infringement under 35 U.S.C. § 283;

D.     An award of damages in accordance with 35 U.S.C. § 284;

E.     An assessment of pre-judgment and post-judgment interest and costs against Aker, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

F.     An award to Rimfrost of its attorney fees incurred in connection with this lawsuit under 35 U.S.C. § 285; and

G.     Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Under Rule 38 of the Federal Rules of Civil Procedure, Rimfrost demands a trial by jury on all issues triable by jury.

Dated: December 23, 2025

OF COUNSEL:

David L. Anstaett
Aaron E. Schindler
DAnstaett@perkinscoie.com
ASchindler@perkinscoie.com
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7460

Courtney M. Prochnow
CProchnow@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 788-9900

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
stamoulis@swdelaw.com
weinblatt@swdelaw.com
**STAMOULIS & WEINBLATT LLC**
800 N. West Street, Third Floor
Wilmington, DE 19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

*Attorneys for Rimfrost Technologies AS*