IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RIMFROST TECHNOLOGIES AS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1559-CFC |
| | ) | |
| AKER BIOMARINE ANTARCTIC US LLC, AKER BIOMARINE MANUFACTURING LLC, AKER BIOMARINE US HOLDING INC., AKER BIOMARINE ASA, LANG PHARMA NUTRITION, INC. and NEWRIDE LLC, | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| AKER BIOMARINE ANTARCTIC US LLC, AKER BIOMARINE MANUFACTURING LLC, AKER BIOMARINE US HOLDING INC., AKER BIOMARINE ASA, and AKER BIOMARINE HUMAN INGREDIENTS AS, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RIMEFROST AS and RIMFROST TECHNOLOGIES AS, | ) ) ) | |
| | ) | |
| Counterclaim- Defendants. | ) | |

**DEFENDANTS' COUNTERCLAIMS, ANSWER,
AND AFFIRMATIVE DEFENSES TO THE COMPLAINT**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants/Counterclaim-

Plaintiffs Aker BioMarine Antarctic US LLC, Aker BioMarine Manufacturing LLC, Aker

BioMarine US Holding Inc., and Aker BioMarine ASA ("Answering Defendants"), together with

Counterclaim-Plaintiff Aker BioMarine Human Ingredients AS (collectively, "Aker BioMarine" or "Counterclaim-Plaintiffs")[1] by and through their attorneys, bring the following Counterclaims against Plaintiff/Counterclaim-Defendants Rimfrost Technologies AS ("Rimfrost Techs." "Counterclaim-Defendant") and Rimfrost AS (collectively "Counterclaim-Defendants" or "Rimfrost"):

## PRELIMINARY STATEMENT

While the Complaint purports to concern intellectual property enforcement, this litigation is actually about leverage, not patents. All Rimfrost entities have failed to compete with Aker BioMarine in the krill oil marketplace for over a decade, so when Rimfrost Techs. heard that Aker BioMarine would be selling its highly successful Human Health Ingredient business unit, Rimfrost Techs. resorted to asserting weak patents to gain leverage over Aker BioMarine at this critical moment. But Rimfrost Techs.'s strategy will fail. Aker BioMarine will show that Rimfrost Techs.'s asserted patents are invalid, that Aker BioMarine does not infringe any valid claim, and that this lawsuit is part of a recurring effort to improperly interfere with Aker BioMarine's business relationships and competitive position.

Aker BioMarine is the innovator here and has established itself as the global leader in the development and commercialization of krill-derived ingredients for human health and nutrition. Over nearly two decades, Aker BioMarine has pioneered technologies for harvesting, processing, and refining krill oil, and has built a substantial body of scientific research supporting its products. Its ingredients are widely used in dietary supplements and other consumer health products

---

[1] Lang Pharma Nutrition, Inc. ("Lang Pharma") is named as a defendant in this action but is not an answering party to these Counterclaims and does not join in or assert the Counterclaims set forth herein. NewRide LLC is named as a defendant in this action but it no longer exists so it is not an answering party to these Counterclaims and does not join in or assert the Counterclaims set forth herein.

worldwide.  In contrast, Rimfrost Techs. did not originate the krill oil processing and extracting technology it now claims as its own, and does not even practice the asserted patents.  The individuals Rimfrost Techs. identifies as inventors on the asserted patents developed their expertise while working with and for Aker BioMarine.  During that time, they and their colleagues developed the concepts and know-how Rimfrost Techs. now repackages as "inventions."  But the asserted patents derive from and are anticipated by Aker BioMarine's work (as well as many other prior art disclosures).  Accordingly, both of Rimfrost Techs.'s asserted patents are plainly invalid.  In addition, Aker BioMarine's accused products do not meet multiple limitations of the asserted claims and do not infringe any valid claim of the asserted patents.

In sum, Rimfrost's claims are meritless. Aker BioMarine will demonstrate that the asserted patents  are invalid, not infringed, and Rimfrost's attempt to use this lawsuit as leverage will not succeed.

## **THE PARTIES**

1.      Aker BioMarine Antarctic US LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 4494 Campbell Road, Houston, TX 77041.

2.      Aker BioMarine Manufacturing LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 4494 Campbell Road, Houston, TX 77041.

3.      Aker BioMarine US Holding Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 15 S Grady Way Suite 610, Renton, WA 98057.

4.      Aker BioMarine ASA is a public limited liability company domiciled in Norway with its registered office at Oksenøyveien 10, 1366 Lysaker, Norway.

5.    Aker BioMarine Human Ingredients AS is a company organized and existing under the laws of Norway, having its principal place of business at Oksenøyveien 10, 1366 Lysaker, Norway.

6.    On information and belief, Rimfrost Technologies AS is a company organized and existing under the laws of Norway, having its principal place of business at Notenesgata 6, 6002 Ålesund, Norway.

7.    On information and belief, counterclaim defendant Rimfrost AS is a corporation organized and existing under the laws of Norway, having its principal place of business at Fosnavåg Brygge, 6090 Fosnavåg, 1515 Herøy, Norway.

## NATURE OF THE ACTION

8.    This action alleges patent infringement under 35 U.S.C. § 271, false advertising under 15 U.S.C. § 1125(a) and tortious interference with prospective business relationships under Delaware law.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over Counterclaim Defendant Rimfrost Technologies AS because Rimfrost Technologies AS has sought the protection of this Court and Delaware law. Rimfrost has done so, *inter alia*, by suing Aker BioMarine for patent infringement in this district.

10.    Venue is proper in this district because Rimfrost Technologies AS is a non-resident corporation subject to personal jurisdiction in the courts of the United States and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

11.    This Court has jurisdiction over counter-claim defendant Rimfrost AS under Fed. R. Civ. P. 4(k)(2).

12.    This action against Rimfrost AS arises under Federal law, namely patent infringement under 35 U.S.C. § 271 and false advertising under 15 U.S.C. § 1125(a).

13. Rimfrost AS is a Norwegian entity not subject to general jurisdiction in any state.

14. On information and belief, Rimfrost AS cannot carry its burden to demonstrate that it is subject to general jurisdiction in any state.

15. Rimfrost AS is subject to jurisdiction consistent with the U.S. Constitution.

16. Rimfrost AS has consistently filed and petitioned the U.S. Patent & Trademark Office, which is located in the United States. Practice before the U.S. Patent & Trademark Office can, by itself, be sufficient to establish jurisdiction over a foreign entity. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009).

17. For example, Rimfrost AS filed *eleven* challenges against Aker BioMarine's patents before the Patent Trial and Appeal Board. *See* IPR2020-01532; IPR2020-01533; IPR2020-01534; IPR2018-00295; IPR2018-01178; IPR2018-01179; IPR2018-01730; PGR2018-00033; IPR2017-00745; IPR2017-00746; IPR2017-00747; IPR2017-00748. Moreover, Rimfrost has consented to jurisdiction in the United States court system by litigating an appeal in the U.S. Court of Appeals for the Federal Circuit. *See Aker Biomarine Antarctic AS v. Rimfrost AS*, No. 19-1097 (Fed. Cir.).

18. In particular, on November 6, 2020, Rimfrost AS challenged the '567 patent in *inter partes* review proceeding IPR2020-01534. On May 18, 2022, the Patent Trial & Appeal Board issued a Final Written Decision confirming that no challenged claims of the '567 patent are unpatentable. This action therefore relates to U.S.-based conduct by Rimfrost AS.

19. In 2025, an agent of Rimfrost AS, Medlen & Carroll LLP, located in the state of Massachusetts, accepted service for Rimfrost AS of materials pertaining to the *ex parte* reexamination of U.S. Patent No. 9,814,256. *See* Ex. 1 (Reexam Record for '256, Receipt of Original Ex Parte Reexam Request, Jan. 13, 2025) at 982, 1049-50; Ex. 1 (Reexam Record,

Reexam Certificate of Service, Jan. 13, 2025) at 681.  On information and belief, Rimfrost AS maintains some interest in the '256 patent which is currently asserted against Aker BioMarine in this district.

20.     On information and belief, Rimfrost AS makes, uses, sells, or imports into the United States krill products and krill oil products.  *See* Ex. 2 (ExImPedia, *Rimfrost AS*, https://www.eximpedia.app/companies/rimfrost-as/75123884 (last accessed Apr. 6, 2026)); Ex. 3 (Rimfrost AS, *Rimfrost Krill Collection*, rimfrostkrill.com (last accessed Apr. 6, 2026)).

21.     Rimfrost AS engages in advertising in the United States, including by maintaining a website accessible in the United States in English: rimfrostkrill.com.  *See* Ex. 3 (rimfrostkrill.com) ("Rimfrost AS Copyright 2026").

22.     On information and belief, Rimfrost AS's rimfrostkrill.com website is accessible in the state of Delaware.

23.     On information and belief, Rimfrost AS's rimfrostkrill.com website has been accessed by individuals in Delaware.

24.     This action arises out of Rimfrost AS's conduct in and/or targeting the United States because it relates to Rimfrost AS's false advertising in the United States *via* rimfrostkrill.com.

25.     Rimfrost AS has sought and obtained the protection of U.S. law and has deliberately targeted the U.S. market.  Accordingly, the U.S. Constitution permits this Court to exercise jurisdiction over Rimfrost AS.

*26.*     Venue is proper as to Rimfrost AS in this district because Rimfrost AS is a foreign defendant that may be sued in any judicial district where jurisdiction is established.  *See generally In re HTC Corp.*, 889 F.3d 1349, 1359 (Fed. Cir. 2018).

## FACTUAL BACKGROUND

27.     Aker BioMarine established its krill division in 2006 in Oslo, Norway based on a scientific and moral conviction in the health benefits of krill-derived nutrients.  Aker BioMarine started with a single fishing boat.  The company has since developed into a leading biotechnology firm focused on advancing human health and nutrition through marine-based products.

28.     Since its founding, Aker BioMarine has invested extensively in research and development.  Aker BioMarine's investment has generated a substantial body of scientific evidence supporting the efficacy and safety of krill oil and related products.

29.     Over nearly two decades, Aker BioMarine's krill-based products have been included in approximately 200 scientific studies.  Aker BioMarine continues to engage with academic and clinical research communities to prove the benefits of its krill products.

30.     Aker BioMarine now has customers in over 60 countries.  Aker BioMarine's business includes its Human Health Ingredients segment, which sells functional components for inclusion in supplements and nutraceutical products, and its Consumer Health Products segment, which sells finished branded products directly to consumers.  Through these segments, Aker BioMarine has been recognized as a leading biotechnology company and a major supplier of krill-based ingredients used in dietary supplements and nutrition products.

### Market Leader in Krill

31.     Aker BioMarine is the world's leading supplier of krill oil and krill-derived nutritional products.

32.     Aker BioMarine's flagship ingredient, SuperbaKrill®, is a premium, science-backed krill oil product used globally in dietary supplements and functional nutrition products.  SuperbaKrill® is supported by more than 50 human clinical trials and over 135 scientific studies,

demonstrating its health benefits across multiple areas, including, but not limited to, cardiovascular, metabolic, cognitive, and joint health.

33.    Aker BioMarine is a scientific leader as well as a market leader. Its scientific leadership is reflected in the fact that approximately 90% of all krill oil clinical trials have been conducted on Aker BioMarine's krill oil products. Aker BioMarine has also been awarded the title of the world's most innovative company in the private sector by the Global Innovation Management Institute (GIMI). This award was not limited to krill companies, and recognized that Aker BioMarine's commitment to sustainability in health products has impacts far beyond the krill industry. Ex. 37 (Nutraceuticals Bus. Rev., *Aker BioMarine Recognised as the "World's Most Innovative Company"*, (Nov. 8, 2024), https://nutraceuticalbusinessreview.com/aker-biomarine-recognised-as-the-world-s-most-innovative).

34.    Aker BioMarine's products are differentiated by their phospholipid-based composition, which enhances nutrient absorption and delivery at the cellular level, contributing to Aker BioMarine's competitive positioning in the omega-3 market.

35.    The superiority of Aker BioMarine's products is reflected in its financial success. In 2025, Aker BioMarine reported net sales of approximately $218.1 million, representing a 10% increase over the prior year. The company's adjusted earnings before interest, taxes, depreciation, and amortization increased significantly to approximately $45.8 million in 2025, reflecting improved profitability and operational performance.

36.    The Human Health Ingredients segment—driven by krill oil products such as SuperbaKrill® —has been the primary engine of growth, with revenues increasing approximately 21% year-over-year due to strong global demand, an expanding customer base, and improved pricing and product mix.

<u>Sustainability Leader</u>

37.    Sustainability has been central to Aker BioMarine's business model since its inception and is integrated into its corporate strategy and operations.

38.    Aker BioMarine sources krill from the Antarctic under a highly regulated, science-based fishery management system governed by the Commission for the Conservation of Antarctic Marine Living Resources (CCAMLR).  Catch limits are set at less than 1% of the estimated krill biomass.  Actual harvesting levels remain well below even that threshold.

39.    Aker BioMarine sources its krill from an Antarctic krill fishery widely recognized as one of the most sustainable fisheries in the world and is certified by independent third parties, including the Marine Stewardship Council ("MSC") and Friend of the Sea.  Ex. 4 (Aker BioMarine Friend of the Sea Certificate) and Ex. 5 (Aker BioMarine MSC Certificate).

40.    Aker sources its krill from the krill fishery business The Qrill Company AS, which up until the 2024 Feed Transaction (as defined in paragraph 87 below) was an integrated part of Aker BioMarine, but now is a supplier to the Company (and still owned 40% by Aker ASA, Aker BioMarine ASA's main owner).

41.    Aker BioMarine's commitment to sustainability is reflected through:

- Certified sustainable sourcing and traceability across its supply chain;

- Full transparency and control over its value chain, from harvesting to finished products;

- Active advocacy for marine conservation, including support for large-scale Marine Protected Areas in Antarctica;

- Ongoing initiatives to reduce emissions, improve resource efficiency, and promote circularity in operations.

42.     The company's sustainability efforts are grounded in a broader mission to "improve human and planetary health," reflecting its dual focus on commercial success and environmental stewardship.

## Rimfrost

43.     On information and belief, Rimfrost Techs. is an IP holding company founded in 2016.

44.     On information and belief, Rimfrost AS[2] was founded in Norway in 2001 and has been engaged in the commercialization of Antarctic krill and krill-derived products, but its similarities with Aker BioMarine largely end there.

45.     On information and belief, Rimfrost Techs. and Rimfrost AS (collectively, "Rimfrost") share the same ultimate parent, Olympic Group AS.

46.     While Rimfrost AS has publicly described itself as "the home of krill innovation," its technical capabilities have primarily been built by employees who previously developed krill-related technologies at Aker BioMarine and its predecessor entities.

47.     For example, Inge Bruheim, the named inventor on the patents that Rimfrost Techs. is currently asserting against Aker BioMarine (U.S. Patent Nos. 9,814,256 ("the '256 patent") and 10,499,673 ("the '673 patent")) began his career at an Aker affiliate, Natural ASA in 2003.  Ex. 6 (LinkedIn Profile of Inge Bruheim).  Natural ASA later merged with Aker BioMarine in 2007.  Mr. Bruheim then worked for Aker BioMarine as an employee until 2008.  *Id.*  During this time, Mr. Bruheim was a core member of Aker BioMarine's krill-related research and development and was subject to confidentiality obligations governing Aker BioMarine's proprietary technology and know-how.  Following the conclusion of his employment, Mr. Bruheim

_____

[2] Rimfrost AS was originally known as Olympic Seafood AS and changed its name to Rimfrost AS in 2014.

entered into a consulting agreement with Aker BioMarine on December 4, 2008, under which he served as a consultant to the company until 2010. *Id.* Thus, on information and belief, Mr. Bruheim worked for or consulted with an Aker-affiliated entity for approximately seven years before he joined Rimfrost AS.

48. Shortly after he ceased working/consulting with Aker BioMarine, Mr. Bruheim was recruited by Rimfrost AS. He worked at Rimfrost AS as Research Director from 2011-2017 and as Vice President of Research and Development from 2018-2025, with a short stint at another company from 2017-2018. *Id.*

49. Mikko Griinari, another named inventor on the '256 patent, worked with and/or consulted for Aker BioMarine in connection with krill-related technologies in at least 2008.

### RIMFROST TECHS.'S ALLEGED INVENTIONS

50. Rimfrost AS was previously the recorded assignee of both the '256 patent and the '673 patent. Ex. 7 (U.S.P.T.O. Assignment Reel/Frame 37018/0951).

51. The '256 patent claims priority to PCT/NO2009/000322, filed on Sep. 14, 2009.

52. However, as late as 2008, Aker BioMarine directly employed one of the named inventors of the '256 patent, Mr. Bruheim as a senior research scientist. Mr. Bruheim was also a permanent member of Aker BioMarine's Patent Group until 2008. Mr. Bruheim continued to serve as a consultant for Aker BioMarine from 2008 until 2010. Ex. 6 (LinkedIn Profile of Inge Bruheim).

53. On information and belief, during the period when Mr. Bruheim served as an employee of and consultant for Aker BioMarine, Mr. Bruheim had access to confidential Aker BioMarine documents, data, information, and know-how.

54. Aker BioMarine's employees continued innovating while Inge Bruheim served as a consultant for the company. For example, in 2009, two Aker BioMarine employees were named

-11-

as inventors on an international patent application publication assigned to Aker BioMarine, WO 2009/027,692, Ex. 8 ("Øistein WO'692").

55.     As discussed in further detail below, Øistein WO'692 discloses each and every limitation of Rimfrost Techs.'s alleged inventions.

56.     On information and belief, Mr. Bruheim was not an employee of Rimfrost AS until 2011.   After Mr. Bruheim joined Rimfrost AS, Rimfrost AS filed PCT/IB2012/003004 on December 21, 2012 as a continuation-in-part of a previously existing patent family that added new subject matter and first named Mr. Bruheim as an inventor.   Thus, Counterclaim Defendants only obtained the '256 patent claims after it recruited Mr. Bruheim, who had significant access to Aker BioMarine's proprietary krill processing research and development.   The '256 patent ultimately issued on November 14, 2017.   PCT/IB2012/003004 continuation in part filed on December 21, 2012 is the earliest application that provides any priority support for the '256 patent.   Accordingly, the earliest possible priority date for the '256 patent is December 21, 2012.

57.     On April 23, 2025, the U.S.P.T.O. issued an *ex parte* reexam Office Action and determined that the '256 patent's priority date is December 21, 2012. Ex. 1 (Reexam Record, April 23, 2025 Office Action) at 482.   Rimfrost Techs. did not challenge that determination and is estopped from challenging it in this litigation.

58.     On information and belief, Rimfrost Techs.'s patent claims were developed using, and built upon, the knowledge, experience, and proprietary work of Aker BioMarine.

59.     On information and belief, Rimfrost Techs. and Rimfrost AS developed their krill technologies (and its subsequent patent filings) using Aker BioMarine's former employees and consultants and the expertise, confidential know-how, and experience they had developed from their work at Aker BioMarine.

60.   Even after hiring Aker BioMarine scientists, Rimfrost AS was years behind Aker BioMarine technologically.

61.   Published prior art demonstrates that Rimfrost AS relied on Aker BioMarine's innovation to develop the "invention" claimed by the '256 patent.

62.   By way of illustration, claim 1 of the '256 patent is anticipated by Øistein WO'692.

63.   Øistein WO'692 is prior art to the '256 patent under pre-AIA 35 U.S.C. § 102(b) because it published on March 5, 2009, more than one year before the 2012 priority date of the '256 patent.  Øistein WO'692 discloses each and every limitation of claim 1 of the '256 patent explicitly or inherently.

64.   Accordingly, the '256 patent is invalid under pre-AIA 35 U.S.C. § 102(b).

65.   To the extent that the Rimfrost Techs. alleges that the prior art did not teach how to achieve compositions comprising astaxanthin that were "clear red," Rimfrost Techs. is incorrect. *See, e.g.*, Ex. 9 (U.S. Patent No. 6,863,914).

66.   To the extent that Rimfrost Techs. alleges that the krill oil composition of the '256 patent is non-obvious because it is made by extraction of krill using the chemical reagent dimethyl ether (DME), Rimfrost is incorrect.  The prior art taught extraction of krill oil using DME.  *See, e.g.*, Ex. 10 (U.S. Patent No. 8,383,845).

67.   To the extent that Rimfrost Techs. alleges that a skilled artisan would have lacked a reasonable expectation of success in achieving the krill oil composition claimed by the '256 patent, Rimfrost Techs.'s allegations run directly contrary to factual representations made by Rimfrost AS in *inter partes* review proceedings.  *See* Ex. 11 (Petitioner's Reply in IPR2017-00745 at 24-26).

68.     Named inventor Inge Bruheim signed a certificate of analysis on February 7, 2008 acknowledging that Aker BioMarine's krill oil (a product on sale before the priority date of the Asserted Patents) was "clear, dark red coloured viscous oil."     *See* Ex. 12 (AKBM Superba® Product Specification).

69.     In *ex parte* reexamination proceedings related to the '256 patent, Rimfrost Techs. took the position that "the term 'clear' means transparent or easily seen through, and 'red color' means a minimum deviation from red color of astaxanthin present in krill oil." Ex. 1 (Reexam Record, July 23, 2025 Patent Owner Remarks) at 112.  As explained in the '256 patent, krill oil typically has a strong red color due to astaxanthin present at 50–1500 ppm. *Id*. at 111.  The disclosure further notes that processing under high temperatures and oxidative conditions can shift this color toward a brownish hue through non-enzymatic browning, caused by lipid oxidation and formation of secondary and tertiary products with amino residues.  *Id.*  Accordingly, the patent hypothesizes that minimum deviation is achieved by using non-enzymatic treatment, thereby reducing browning reactions and brownish hue.  *Id.*

70.     Rimfrost Techs. cannot have it both ways—if, as Rimfrost Techs. argued during reexamination, the terms "clear" and "red" exclude prior art high-astaxanthin oil products, including Aker BioMarine's pre-priority date products, then Aker BioMarine's products cannot now fall within the scope of the "clear red" limitation of the '256 patent.

71.     In addition to Rimfrost building on Aker BioMarine's innovations, as discussed above, another krill oil competitor, Enzymotec, entered the market with a new krill oil product before the priority date of the Asserted Patents.  According to published prior art, this product was claimed to contain particularly low levels of TMA and TMAO.  *See* Ex. 13, Enzymotec Quality Assurance Report (Dec. 2010) at 10, 12; *See also* Ex. 14, Enzymotec Activated Omega 3 K-

REAL™ Advertisement.   Specifically, Enzymotec (identified as "Producer C" in the report) exhibited non-detectable TMA concentrations (below 1 mg/100g).  Ex. 13, Enzymotec Quality Assurance Report (Dec. 2010) at 10.   Similarly, TMAO levels for Enzymotec krill oil product were below the detection limit across all three samples.  *Id.* at 12.

72.    Rimfrost Techs. also asserts that it owns the '673 patent.  The '673 patent purports to claim priority to PCT/NO2009/000322, filed on Sep. 14, 2009.  On its face, the '673 patent also claims priority to PCT/IB2012/003004, to which the '256 patent claims priority.

73.    The '673 patent lists Inge Bruheim as its first named inventor.

74.    The '673 patent also depends upon Aker BioMarine's innovation.

75.    On information and belief, Inge Bruheim did not work for Rimfrost AS before 2011.

76.    Inge Bruheim was not listed as an inventor on a patent application in the '673 patent's chain of priority until Rimfrost AS filed U.S. Patent Appl. No. 13/342,664 on January 3, 2012.  U.S. Patent Appl. No. 13/342,664 is a continuation-in-part of previous applications in the family and added new matter to the application.

77.    PCT/IB2012/003004 continuation in part filed on December 21, 2012 is the earliest application that provides any priority support for the '673 patent.  Accordingly, the earliest possible priority date for the '673 patent is December 21, 2012.

78.    By way of illustration, claim 1 of the '673 patent is also anticipated by Øistein WO'692.

79.    Øistein WO'692 is prior art to the '673 patent under pre-AIA 35 U.S.C. § 102(b) because it published on March 5, 2009, more than one year before the 2012 priority date of the '673 patent.

80.    Øistein WO'692 discloses each and every limitation of claim 1 of the '673 patent explicitly or inherently.

81.    Accordingly, the '673 patent is invalid under pre-AIA 35 U.S.C. § 102(b).

82.    To the extent that Rimfrost Techs. alleges that the extracted krill oil of the '673 patent is non-obvious because it is made by DME extraction of krill, Rimfrost is incorrect. The prior art taught DME extraction of krill oil. *See, e.g.*, Ex. 10 (U.S. Patent No. 8,383,845).

83.    To the extent that Rimfrost Techs. alleges that a skilled artisan would have lacked a reasonable expectation of success in achieving the krill oil composition claimed by the '673 patent, Rimfrost Techs.'s allegations run directly contrary to factual representations made by Rimfrost AS in *inter partes* review proceedings. *See* Ex. 11 (Petitioner's Reply in IPR-2017-00745 at 24-26).

84.    As discussed above with respect to the '256 patent, the Enzymotec oil introduced into the market also had high levels of phospholipids and extremely low levels of TMA/TMAO.

85.    Accordingly, this prior art also renders the '673 Patent invalid.

**RIMFROST TECHS.'S IMPROPER BUSINESS PRACTICES**

86.    In February 2024, Aker BioMarine announced that it was planning to divest its Feed Ingredients business to better position the company for continued growth and profitability in the nutrition and dietary supplement markets. Ex. 15 (Aker BioMarine, *Second Quarter Report 2024*, https://www.akerbiomarine.com/hubfs/AKBM%20Q2%20Report%202024%20Published.pdf) at 5.

87.    Shortly after, on May 5, 2024, Rimfrost Techs. sent a letter to Aker BioMarine asserting infringement of U.S. Patent Nos. 9,814,256 and 9,068,142 and threatening an enforcement action. *See* Ex. 16 (Rimfrost Techs. Letter).

-16-

88.    On May 30, 2024, Aker BioMarine responded, rejecting Rimfrost Techs.'s allegations and identifying invalidity and non-infringement positions. *See* Ex. 17 (Aker BioMarine Letter).

89.    On July 3, 2024, Aker BioMarine announced that it had entered into an agreement with American Industrial Partners and Aker Capital for purchase of its Feed Ingredients business. Ex. 18 ("2024 Feed Transaction") (Aker BioMarine Press Release, April 7, 2024).

90.    On information and belief, Rimfrost Techs. did not make its infringement allegations as a good-faith effort to enforce valid intellectual property rights, but instead as an attempt to disrupt the 2024 Feed Transaction.

91.    On information and belief, Rimfrost Techs. raised infringement allegations and threatened litigation to create uncertainty regarding Aker BioMarine's freedom to operate, complicate negotiations with counterparties; and jeopardize or delay the 2024 Feed Transaction. Rimfrost, however, failed to recognize that the patents it asserted in its letter were not remotely relevant to Aker BioMarine's Feed Ingredient business.

92.    Now Rimfrost Techs. is again attempting to improperly interfere with Aker BioMarine's business relationships and strategic opportunities.

93.    In late 2025, several analysts covering Aker BioMarine indicated that a sale of its Human Health Ingredient business unit was imminent. Ex. 19 (Certified Translation of Finansavisen, *Øker kursmålet kraftig: Ser ny transaksjon i Røkke-selskaptranslation* (Sept. 29, 2025) of https://www.finansavisen.no/industri/2025/09/29/8296095/oker-kursmalet-kraftig-ser-ny-transaksjon-i-rokke-selskap).

94.    On information and belief, Rimfrost Techs. knew about Aker BioMarine's potential Transaction before December 23, 2025.

95. Rimfrost Techs. filed the complaint in this matter on December 23, 2025.

96. On information and belief, Rimfrost Techs. filed its Complaint with the intention to impede the sale of Aker BioMarine's Human Health Ingredient business unit.

97. In February 2026, Aker BioMarine announced that it engaged investment banks to work towards a potential transaction in 2026 involving Aker BioMarine's Human Health Ingredient business unit (the "Transaction").

98. Aker BioMarine has existing and prospective business relationships, including with investment banks, prospective acquirers, strategic partners, financing sources, and commercial counterparties, in connection with the Transaction.

99. On information and belief, Rimfrost Techs. knew of these relationships and business opportunities, including Aker BioMarine's ongoing efforts to pursue the Transaction.

100. On information and belief, Rimfrost Techs. is unlawfully scheming to interfere with Aker BioMarine's prospective relationships in the Transaction, including with commercial buyers and investors.

101. Rimfrost Techs.'s conduct constitutes improper and wrongful interference, including because it is based on objectively baseless assertions, misleading statements, and conduct undertaken for the purpose of disrupting a competitor's business relationships rather than engaging in legitimate competition.

102. Rimfrost Techs.'s conduct is intended to cause Aker BioMarine to lose business opportunities, including investor and sales opportunities related to the Transaction.

103. Rimfrost Techs. is attempting to improperly cast a shadow of illegitimacy over Aker BioMarine, including to potential investors in Aker BioMarine's Human Health Ingredient

business unit, and is attempting to prohibit Aker BioMarine from completing its Transaction and achieving its strategic business goals.

104. Rimfrost Techs. filed its complaint on December 23, 2025 and had 90 days, until March 23, 2026, to serve all defendants. On information and belief, Rimfrost informed (at least) potential customers of the lawsuit before it even attempted service of the Complaint. Rimfrost Techs. did not even attempt service on several defendants until March 16, 2026 and failed to serve all the Defendants within the 90-day period the Federal Rules require. This disclosure and delay further demonstrates that Rimfrost is using the litigation for an improper purpose.

105. On information and belief, just like it did around the 2024 Feed Transaction, Rimfrost Techs. is making infringement allegations not for any proper purpose, but instead because Rimfrost Techs. believes the mere assertion of infringement, regardless of its baseless nature, will cause competitive harm to Aker BioMarine and will interfere with the planned Transaction.

## **RIMFROST AS ENGAGES IN FALSE ADVERTISING**

106. Rimfrost AS is engaging in and has engaged in false and misleading advertising that harms Aker BioMarine, a competitor in the krill oil market, as well as consumers.

### Rimfrost AS's False Sustainability Advertising

107. Rimfrost AS is misrepresenting and has misrepresented its sustainability certifications to mislead customers and steal unearned market share in the krill oil market.

108. On its website, Rimfrost AS claims that it "is the only krill company with both Friend of the Sea and Marine Stewardship Council ("MSC") certifications." Ex. 3 (https://www.rimfrostkrill.com/) (last accessed April 6, 2026). That is not true.

109. First, Rimfrost AS does not currently have MSC certification and has not since at least February 19, 2021. MSC lists Rimfrost's fishery as "no longer in the program." Ex. 20 (https://fisheries.msc.org/en/fisheries/rimfrost-antarctic-krill/).

110.    The statement is misleading because it suggests that Rimfrost has a fishery that meets international best practice for sustainable fishing under MSC, but Rimfrost has no such fishery.  Furthermore, Rimfrost AS uses present tense "is" to falsely suggest that Rimfrost AS currently possesses MSC certification.  It does not.

111.    The MSC certification confers substantial commercial advantages to holders of that certification.  A company holding an MSC Certificate gains enhanced reputation and credibility, access to new markets and customers, and marketing and promotional benefits.  Ex. 21 (Marine Stewardship Council, *Why Get Your Fishery MSC Certified?*, https://www.msc.org/en-us/for-business/fisheries/why-get-certified (last accessed Apr. 6, 2026)).

112.    Consumers and commercial purchasers of krill oil products place significant value on sustainability certifications such as MSC when making purchasing decisions.

113.    Sustainability-labeled products routinely command price premiums and increased market demand because such certifications signal environmentally responsible sourcing and compliance with internationally recognized standards.  As a result, claims regarding MSC certification are material to consumers and influence purchasing behavior in the krill oil market.

114.    Rimfrost AS's advertisement that it "is the only krill company with both Friend of the Sea and MSC certifications," is also misleading because Aker BioMarine holds both Friend of the Sea and MSC certifications.

115.    By claiming to be the "only" krill company with both Friend of the Sea and MSC certifications, Rimfrost falsely claims that Aker BioMarine does *not* have both Friend of the Sea and MSC certifications.  However, Aker BioMarine does possess both certifications.  *See* Ex. 4 (Friend of the Sea Certification); Ex. 5 (MSC Certification).

-20-

Aker BioMarine has invested substantial resources to obtain and maintain legitimate sustainability credentials.

116. Rimfrost AS's false and misleading claims that it possesses certification it does not possess improperly divert sales from Aker BioMarine.

117. Rimfrost AS's false and misleading statements have caused and continue to cause competitive injury to Aker BioMarine. By falsely claiming to hold MSC certification, Rimfrost AS induces customers who value sustainability to choose its products. Those customers would otherwise have chosen to purchase Aker BioMarine's products.

118. Aker BioMarine has suffered and will continue to suffer competitive harm in the krill oil market due to Rimfrost AS's false and misleading claims regarding sustainability certifications.

<u>Rimfrost AS's False Advertising of "Patented … Technology"</u>

119. In a second false and misleading advertisement, Rimfrost AS claims to use a "patented enzymatic hydrolysis technology to process [its] krill." Ex. 22 (Rimfrost Krill Collection Brochure 2024 Digital Issue).

120. Rimfrost AS further represents that this purported technology allows it to take better care of krill nutrients and use 30% less krill than most other companies, helping to guarantee the sustainability of Rimfrost AS krill products. *Id.*

121. On information and belief, Rimfrost AS does not use a patented enzymatic hydrolysis process.

122. On information and belief, Rimfrost AS does not possess the equipment or onboard processing capabilities necessary to perform the enzymatic hydrolysis process it claims to use.

123. On information and belief, no other Rimfrost entity possesses the equipment or onboard processing capabilities necessary to perform the enzymatic hydrolysis process it claims to use.

124. Because Rimfrost AS lacks onboard processing capabilities, Rimfrost is unlike other krill harvesting companies, including Aker BioMarine, which operate vessels equipped to harvest and process krill.

125. Rimfrost AS previously developed and invested in certain onboard processing technologies associated with the vessel *Juvel*. Rimfrost AS relied on *Juvel* and its specialized equipment and capabilities to perform the enzymatic hydrolysis process referenced in Rimfrost's advertising. *See* Ex. 23 (Rimfrost AS, *Rimfrost Krill Collection: The Difference Is Clear*, http://viewer.webproof.com/pageflip/324/173551/files/Rimfrost-2016.pdf)

126. Aker BioMarine acquired *Juvel* in 2017 in an auction after Emerald Fisheries AS, part of the Rimfrost Group, filed for bankruptcy. Ex. 24 (FiskerForum, *Juvel Sold to Aker BioMarine* (June 9, 2017), https://fiskerforum.com/juvel-sold-to-aker-biomarine/).

127. On information and belief, Rimfrost AS lacks the technology to use its allegedly patented enzymatic hydrolysis processes without *Juvel*.

128. On information and belief, Rimfrost AS has not built or obtained a new vessel to replace *Juvel*. Ex. 25 (https://www.ark-krill.org/about-us).

129. On information and belief, Rimfrost AS acquires its krill meal from Pesca Chile. Pesca Chile harvests and processes Antarctic krill into commercial products, including krill meal, which it supplies into global markets such as aquaculture and pet food.

130.     On information and belief, Rimfrost AS does not currently possess, operate, or have access to the specialized equipment, systems, or infrastructure required to perform any patented enzymatic hydrolysis process.

131.     Nevertheless, Rimfrost AS continues to advertise that it utilizes a "patented" process.  In so doing, Rimfrost misleads customers into believing that its products are produced using superior, proprietary technology that enhances nutrient preservation and sustainability.  Ex. 22 (Rimfrost Krill Collection Brochure 2024 Digital Issue).

132.     On information and belief, Rimfrost does not sell any products covered by the '256 patent.  Indeed, Rimfrost lacks the capacity to produce krill oil products that would practice the '256 patent.

133.     On information and belief, Rimfrost does not sell any products covered by the '673 patent.  Indeed, Rimfrost lacks the capacity to produce krill oil products that would practice the '673 patent.

134.     Rimfrost AS also falsely promotes its krill harvesting vessel and onboard processing capabilities as enabling superior product quality and sustainability by processing krill immediately after catch. These misrepresentations reinforce Rimfrost's broader marketing message that its products meet the highest environmental and quality standards, amplifying the misleading impression created by its false claims.

135.     As a direct and proximate result of Rimfrost's false and misleading statements, Aker BioMarine has suffered and continues to suffer competitive injury.   Rimfrost's misrepresentations distort competition, erode Aker BioMarine's goodwill and reputation for sustainability leadership, and allow Rimfrost to compete for customers and command price premiums to which it is not entitled.

## RIMFROST TECHS. HAS NO RIGHT TO INJUNCTIVE RELIEF

136. Rimfrost Techs. is not entitled to injunctive relief and could not carry its burden to show entitlement to either a preliminary or permanent injunction.

137. Rimfrost Techs. is not likely to succeed on the merits of its patent claims.

138. For at least the reasons explained above, a substantial question exists as to the validity of the asserted '256 patent.

139. For at least the reasons explained above, a substantial question exists as to the validity of the asserted '673 patent.

140. Rimfrost cannot show irreparable harm sufficient to entitle it to injunctive relief.

141. On information and belief, Rimfrost Techs. is an intellectual property holding company.

142. On information and belief, Rimfrost Techs. sells no products to consumers.

143. On information and belief, Rimfrost Techs. does not compete with any Aker BioMarine entity in the marketplace.

144. On information and belief, Rimfrost Techs. suffers no lost market share due to Aker BioMarine's allegedly-infringing sales because Rimfrost Techs. does not have market share to lose.

145. On information and belief, Rimfrost Techs. suffers no reputation harm due to Aker BioMarine's allegedly-infringing sales.

146. Rimfrost Techs. delayed in bringing this action by years and further delayed in serving the Complaint, and thus cannot show irreparable harm.

147. On May 5, 2024, Rimfrost Techs. sent a letter to Aker BioMarine asserting infringement of U.S. Patent Nos. 9,814,256 and 9,068,142 and threatening an enforcement action. Ex. 16 (2024 05 02 Letter to Aker Biomarine).

148.    Rimfrost Techs. delayed for more than one year before filing its Complaint in this action.

149.    On information and belief, Rimfrost Techs. delayed because it suffers no actual harm and any minimal harm it suffered due to Aker BioMarine's allegedly infringing sales was, at most, monetary harm.

150.    On information and belief, Rimfrost Techs. derives substantially all of its revenue from licensing intellectual property.

151.    On information and belief, any compensation owed to Rimfrost Techs. would consist of a reasonable royalty.

152.    Aker BioMarine is sufficiently capitalized to pay any damages award.

153.    The public interest would be harmed by any injunction of Aker BioMarine.

154.    Aker BioMarine's products promote individual and public health.

155.    Removal of Aker BioMarine's products from the marketplace would harm the health of individuals who currently take Aker BioMarine's products.

156.    On information and belief, Rimfrost Techs. lack the capacity to supply the market for Aker BioMarine's allegedly-infringing sales.

157.    On information and belief, Rimfrost Techs. also lacks the financial stability to obtain a bond required for an injunction.

158.    For any and all of the reasons given above, Rimfrost Techs. cannot obtain injunctive relief based on its allegations of infringement.

### U.S. PATENT NO. 10,010,567

159.    On July 3, 2018, U.S. Patent No. 10,010,567 issued to Aker BioMarine Antarctic AS as the assignee of Inge Bruheim, Snorre Tilseth, and Daniele Mancinelli.  A copy of the '567 patent is attached as Exhibit 26.

160.    On March 5, 2024, Aker BioMarine Antarctic AS assigned all rights, title, and interest in the '567 patent to Aker BioMarine Human Ingredients AS. A copy of the assignment is attached as Exhibit 38. Aker BioMarine Human Ingredients AS is the current owner of all rights, title, and interest in the '567 patent, including the right to sue for past and present infringement.

161.    The '567 patent is valid and enforceable.

162.    The claims of the '567 patent are directed to novel and non-obvious compositions of encapsulated krill oil having certain chemical profiles.

163.    On November 6, 2020, Rimfrost AS challenged the '567 patent in *inter partes* review proceeding IPR2020-01534.  On May 18, 2022, the Patent Trial & Appeal Board issued a Final Written Decision confirming that no challenged claims of the '567 patent are unpatentable. A copy of the Final Written Decision is Attached as Exhibit 27.

164.    Rimfrost did not appeal the Patent Trial & Appeal Board's Final Written Decision.

165.    35 U.S.C. § 315(e) bars Rimfrost from challenging the validity of the '567 patent on any grounds Rimfrost raised or could have raised in the IPR proceedings.

Rimfrost's Infringing Conduct

166.    Rimfrost AS has been aware of the '567 Patent since at least before November 6, 2020 when it filed an *inter partes* review proceeding challenging that patent.  Rimfrost AS filed that challenge despite Aker BioMarine never previously accusing Rimfrost AS of infringing the '567 patent because Rimfrost AS knew, or should have known, that its krill oil products infringed the '567 Patent.  *See* Ex. 28 (Rimfrost AS Petition for IPR2020-01534).

167.    On information and belief, Rimfrost AS has made, offered for sale, sold, or imported krill oil products in or into the United States within the past six years, at least under the trade name "Rimfrost Sublime" (hereinafter "the Rimfrost Sublime Krill Oil Product").

168.    On information and belief, Rimfrost AS sells or offers for sale its krill oil products to other companies who then sell krill oil products to consumers under other retail brands.  *See e.g.*, Ex. 29.[3]

169.    A chart summarizing how the Rimfrost Sublime Krill Oil Product meets each and every claim limitation of at least claim 1 of the '567 patent is attached as Exhibit 30.

170.    Rimfrost AS has made, used, sold, offered for sale its infringing Rimfrost Sublime Krill Oil Product within the last six years as demonstrated by the fact that  Rimfrost AS maintains an active Friend of the Sea® certification for Rimfrost Sublime Krill Oil that does not expire until November 17, 2026.  Ex. 4 (Rimfrost Friend of the Sea Certification).

171.    Rimfrost AS and/or Rimfrost Techs. have made, used, sold, offered for sale its infringing Rimfrost Sublime Krill Oil Product within the last six years as demonstrated by the fact that  Rimfrost Techs.'s Trademark Serial Number 79136090 "Rimfrost Sublime" remained in force until July 16, 2021.  Ex. 31 (TESS Trademark Record for Serial No. 79136090).  "[A] holder of a registered mark enjoys the benefit of his certificate as prima facie evidence of the validity of the registration, his ownership of the mark, and his exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate; also of his continued use of the mark from the date of filing the application  . . . ."  *Massey Junior Coll., Inc. v. Fashion Inst. of Tech.*, 492 F.2d 1399, 1402 (C.C.P.A. 1974) (footnote omitted).

---

[3] iHerb, *California Gold Nutrition, Antarctic Krill Oil, Omega-3 Phospholipids Complex with Astaxanthin, Natural Strawberry and Lemon, 500 mg, 120 Fish Gelatin Softgels*, https://www.iherb.com/pr/california-gold-nutrition-antarctic-krill-oil-omega-3-phospholipids-complex-with-astaxanthin-natural-strawberry-and-lemon-500-mg-120-fish-gelatin-softgels/71630?gad_campaignid=841968905&gad_source=1&gclid=Cj0KCQjwp7jOBhDGARI sABe7C4dD8w9KyW9jTpqZZwuzAmImxrSeyekcp-tkBygXKxuuDn_M-04B9EgaAp9uEALw_wcB&gclsrc=aw.ds.%20Here%20the%20marketed%20name%20is%20Ri mfrost%20Krill (last accessed Apr. 6, 2026)

## FIRST COUNTERCLAIM
### TORTIOUS INTERFERENCE UNDER DELAWARE LAW

172.   Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

173.   Rimfrost is tortiously interfering with Aker BioMarine's prospective business relationships, including with potential investors relating to its potential Human Health Ingredients Transaction.

174.   Rimfrost is using improper, wrongful, and anticompetitive means to intentionally interfere with Aker BioMarine's opportunities and has an improper, wrongful, and anticompetitive motive to do so.

## SECOND COUNTERCLAIM
### FALSE ADVERTISING 15 U.S.C. § 1125(A)

175.   Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

176.   Rimfrost AS has made in interstate commerce and, on information and belief, continues to make in interstate commerce false and misleading statements of fact regarding its business practices and krill oil products.  Rimfrost AS competes with Aker BioMarine in at least the krill oil products marketplace globally, and, on information and belief, in the United States, and the state of Delaware.

177.   As detailed above, Rimfrost AS has made and continues to make false and misleading statements regarding its business and specifically its sustainability efforts.  Rimfrost also falsely advertises its krill products as originating from a "patented enzymatic hydrolysis technology to process."

178.   Rimfrost AS's statements constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), § 43(a) of the Lanham Act, because they are false or, at minimum, misleading.

-28-

179.    Rimfrost AS's misleading representations that it holds active MSC certification and utilizes patented enzymatic hydrolysis processing technology are material in that they are likely to influence consumers' and commercial purchasers' purchasing decisions.  Further, sustainability certifications and proprietary processing technology are material characteristics that purchasers of krill oil products consider before selecting a supplier, including because such credentials signal environmentally responsible sourcing, compliance with internationally recognized standards, and superior product quality.  Purchasers are less likely to select a supplier that does not hold legitimate sustainability certifications or does not possess the processing capabilities it claims.

180.    Rimfrost AS's false and/or misleading statements have the tendency to deceive a substantial segment of consumers and commercial purchasers and, on information and belief have actually deceived a substantial segment of consumers and commercial purchasers.

181.    The false and/or misleading statements above have injured and are likely to further injure Aker BioMarine because Rimfrost AS directly competes with Aker BioMarine in the krill oil market.  In deceiving consumers and commercial purchasers into purchasing krill oil from Rimfrost AS, Rimfrost AS has depressed demand from Aker BioMarine's krill oil products, leading Aker BioMarine to lose business and directly and negatively affect its revenue.

182.    On information and belief, the statements have therefore also harmed and continue to harm Aker BioMarine's business relationships and goodwill with its actual and potential customers, as they make these customers less likely to continue purchasing Aker BioMarine's products, and have eroded Aker BioMarine's goodwill and reputation for sustainability leadership in the krill oil market.

183.    As a result, Aker BioMarine has been injured as a direct and proximate result of the wrongful acts of Rimfrost alleged above.

-29-

184. Aker BioMarine has suffered, and will continue to suffer, substantial damage to its business reputation, goodwill, and market share, for which Aker BioMarine has no remedy at law.

185. Rimfrost AS's false advertising will continue to injure Aker BioMarine, causing irreparable injury to Aker BioMarine, including but not limited to loss of customers, loss of short-term and long-term market share, and damages to the goodwill associated with Aker BioMarine's business, for which there is no adequate remedy at law, unless permanently enjoined by this Court.

186. Based on the foregoing, Aker BioMarine is entitled to enhanced monetary damages of up to three times the amount of Aker BioMarine's actual damages and/or Rimfrost AS's profits resulting from Rimfrost AS's false advertising, in an amount to be proven at trial, and the costs of the action, pursuant to 15 U.S.C. § 1117. Aker BioMarine also is entitled to an accounting of Rimfrost AS's profits resulting from its Lanham Act violations.

187. On information and belief, Rimfrost AS's false advertising is willful, knowing, calculated to deceive, and was undertaken in bad faith. As a result, this Court should determine that this is an exceptional case and award Aker BioMarine its attorneys' fees and costs incurred in prosecuting this action pursuant to 15 U.S.C. § 1117.

## THIRD COUNTERCLAIM
### INFRINGEMENT OF THE '567 PATENT

188. Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

189. A chart summarizing how the Rimfrost Sublime Krill Oil Product meets at least each and every claim limitation of claim 1 of the '567 patent is attached as Exhibit 30.

190. Upon information and belief, Rimfrost AS is or has within the last six years engaged in manufacturing, marketing, selling, offering to sell, promoting, and/or importing the Rimfrost Sublime Krill Oil Product in the United States in violation of 35 U.S.C. § 271(a).

-30-

191.    Upon information and belief, Rimfrost AS is actively inducing others to infringe the '567 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing and otherwise promoting and distributing the Rimfrost Sublime Krill Oil Product in the United States in violation of 35 U.S.C. § 271(b).  Rimfrost AS's inducement includes, without limitation and with specific intent to encourage direct infringement, knowingly inducing others to use, sell, offer to sell the Rimfrost Sublime Krill Oil Product.

192.    Rimfrost AS's inducement includes, without limitation and with specific intent to encourage direct infringement, knowingly inducing Rimfrost AS's U.S.-based subsidiaries and sibling companies to use, sell, offer to sell the Rimfrost Sublime Krill Oil Product.

193.    On information and belief, Rimfrost AS has been and is contributing to the infringement of the '567 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing and otherwise promoting and distributing the Rimfrost Sublime Krill Oil Product in violation of 35 U.S.C. § 271(c).

194.    On information and belief, the Rimfrost Sublime Krill Oil Product is not a staple article or commodity of commerce suitable for substantial non-infringing use.

195.    Aker BioMarine Human Ingredients AS is entitled to pre-suit damages because it is not required to mark any product under 35 U.S.C. § 287.

196.    Upon information and belief, as a result of Rimfrost's infringement of the '567 patent, Aker BioMarine Human Ingredients AS has suffered damages.

197.    Upon information and belief, Rimfrost has knowingly and willfully infringed the '567 patent.

198.    This case is exceptional, and Aker BioMarine Human Ingredients AS is entitled to an award of attorney's fees under 35 U.S.C. § 285.

-31-

## FOURTH COUNTERCLAIM
### DECLARATORY JUDGMENT OF INVALIDITY OF THE '256 PATENT

199.    Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

200.    Rimfrost Techs. has brought claims against Aker BioMarine alleging infringement of the '256 patent.

201.    Aker BioMarine alleges that the claims of the '256 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one of or more of §§ 101, 102, 103, 112, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of defenses recognized in 35 U.S.C. § 282.

202.    Aker BioMarine is entitled to a declaratory judgment from this Court that the '256 patent is invalid.

## FIFTH COUNTERCLAIM
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '256 PATENT

203.    Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

204.    Rimfrost Techs. has brought claims against Aker BioMarine alleging infringement of the '256 patent.

205.    A real, immediate, and justiciable controversy exists between Rimfrost Techs. and Aker BioMarine regarding Aker BioMarine's alleged infringement of the '256 patent.

206.    Aker BioMarine has not infringed and is not infringing any valid claims of the '256 patent willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.  Moreover, the activities alleged in the Complaint do not constitute infringement.

207.  Aker BioMarine is entitled to a declaratory judgment from this Court that Aker BioMarine does not infringe, and has not infringed, either directly or indirect, any valid claim of the '256 patent, either literally or under the doctrine of equivalents.

## SIXTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '673 PATENT

208.  Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

209.  Rimfrost Techs. has brought claims against Aker BioMarine alleging infringement of the '673 patent.

210.  Aker BioMarine alleges that the claims of the '673 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one of or more of §§ 101, 102, 103, 112, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of defenses recognized in 35 U.S.C. § 282.

211.  Aker BioMarine is entitled to a declaratory judgment from this Court that the '673 patent is invalid.

## SEVENTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '673 PATENT

212.  Counterclaim Plaintiff Aker BioMarine realleges and incorporates by reference herein each and every allegation set forth above.

213.  Rimfrost Techs. has brought claims against Aker BioMarine alleging infringement of the '673 patent.

214.  A real, immediate, and justiciable controversy exists between Rimfrost Techs. and Aker BioMarine regarding Aker BioMarine's alleged infringement of the '673 patent.

215.    Aker BioMarine has not infringed and is not infringing any valid claims of the '673 patent willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.  Moreover, the activities alleged in the Complaint do not constitute infringement.

216.    Aker BioMarine is entitled to a declaratory judgment from this Court that Aker BioMarine does not infringe, and has not infringed, either directly or indirect, any valid claim of the '673 patent, either literally or under the doctrine of equivalents.

\* \* \*

## ANSWER

Defendants, Aker BioMarine Antarctic US LLC, Aker BioMarine Manufacturing LLC, Aker BioMarine US Holding Inc., and Aker BioMarine ASA ("Answering Defendants")[4], by and through their undersigned counsel, hereby respond to the allegations contained in the Complaint filed by Rimfrost and state their defenses to the claims asserted against it.  All allegations not expressly admitted herein, including those contained in the structure of the headings of the Answer, are denied.

## THE PARTIES

1.    Plaintiff Rimfrost Technologies AS is a corporation organized and existing under the laws of Norway, having its principal place of business at Notenesgata 6, 6002 Ålesund, Norway.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1, and therefore deny them.

2.    On information and belief, Defendant Aker BioMarine Antarctic US LLC is a corporation organized and existing under the laws of Delaware with a principal place of business

---

[4] Answering Defendants do not speak for other parties named as defendants in this action and neither admissions nor denials by Answering Defendants should be construed as admissions or denials by any other parties.

at 4494 Campbell Road, Houston, TX 77041.

**ANSWER**: Answering Defendants admit that Aker BioMarine Antarctic US LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business at 4494 Campbell Road, Houston, TX 77041.  Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 2.

3.      On information and belief, Defendant Aker BioMarine Manufacturing LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 4494 Campbell Road, Houston, TX 77041.

**ANSWER:** Answering Defendants admit that Aker BioMarine Manufacturing LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business at 4494 Campbell Road, Houston, TX 77041.  Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 3.

4.      On information and belief, Defendant Aker BioMarine US Holding Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 15 S Grady Way Suite 610, Renton, WA 98057.

**ANSWER:** Answering Defendants admit that Aker BioMarine US Holding Inc. is a corporation organized and existing under the laws of the State of Delaware.  To the extent a further response is required, Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4, and therefore deny them.

5.      On information and belief, Defendant Aker BioMarine ASA is a limited liability company domiciled in Norway with its registered office at Oksenøyveien 10, 1366 Lysaker, Norway. On information and belief, Defendant Aker BioMarine ASA is the parent company for the other Aker entities, which are subsidiaries.

**ANSWER:** Paragraph 5 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants admit that Aker BioMarine ASA is a public company listed on the Oslo Stock Exchange domiciled in Norway with its registered office at Oksenøyveien 10, 1366 Lysaker, Norway.  To the extent a further response is required, Answering

Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 5, and therefore deny them.

6.     On information and belief, Defendant Lang Pharma Nutrition, Inc. is a corporation organized and existing under the laws of Rhode Island with a principal place of business at 20 Silva Lane, Middletown, RI 02842.

**ANSWER:** The allegations in paragraph 6 pertain to another party and require no response from Answering Defendants.  To the extent that paragraph 6 contains allegations as to Answering Defendants, denied.

7.     On information and belief, Defendant NewRide LLC is a corporation organized and existing under the laws of Delaware with a principal place of business at 15 S Grady Way Suite 610, Renton, WA 98057. On information and belief, Defendant NewRide LLC is a holding company for Defendant Lang Pharma Nutrition, Inc.

**ANSWER:** The allegations in paragraph 7 pertain to NewRide LLC, which no longer exists.  The allegations in paragraph 7 require no response from Answering Defendants.  To the extent that paragraph 7 contains allegations as to Answering Defendants, denied.

8.     On information and belief, Aker is in the business of harvesting and processing krill and producing krill oil products, which they manufacture in the United States and distribute, offer for sale, and sell in the State of Delaware and throughout the United States, as well as worldwide.

**ANSWER:** Answering Defendants admit that Aker BioMarine Antarctic US LLC and Aker BioMarine Manufacturing LLC develop, manufacture, and sell krill oil products in the United States.  Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 8.

## NATURE OF THE ACTION

9.     This action alleging patent infringement by Aker arises under the patent laws of the United States, Title 35, United States Code, § 100 et seq., including 35 U.S.C. § 271.

**ANSWER:** Paragraph 9 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants admit that Rimfrost Techs. purports to bring

-36-

an action for patent infringement under the patent laws of the United States. Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 9.

10. Rimfrost Technologies AS is the owner by assignment of all rights, title, and interest in U.S. Patent No. 9,814,256 (the "'256 patent") and U.S. Patent No. 10,499,673 (the "'673 patent") (collectively, "Patents-in-Suit").

**ANSWER:** Paragraph 10 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10, and therefore deny them.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Paragraph 11 states legal conclusions to which no response is required. To the extent a response is deemed required, for purposes of this action only, Answering Defendants do not contest that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Answering Defendants deny any remaining allegations in Paragraph 11.

12. This Court has personal jurisdiction over Defendant Aker BioMarine Antarctic US LLC because Aker BioMarine Antarctic US LLC is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 12.

13. This Court has personal jurisdiction over Defendant Aker BioMarine Manufacturing LLC because Aker BioMarine Manufacturing LLC is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 13.

14. This Court has personal jurisdiction over Defendant Aker BioMarine US Holding Inc. because Aker BioMarine US Holding Inc. is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** Paragraph 14 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 14.

15. This Court has personal jurisdiction over Defendant Aker BioMarine ASA because Aker BioMarine ASA has sufficient minimum contacts with this forum as a result of business conducted within the State of Delaware and this district. Personal jurisdiction also exists specifically over Aker BioMarine ASA because Aker BioMarine ASA, directly or through subsidiaries, intermediaries, or joint ventures, makes, uses, offers for sale, sells, and/or imports krill oil products within this district that infringe the Patents-in-Suit, as described more specifically below. Personal jurisdiction also exists specifically over Aker BioMarine ASA because Aker BioMarine ASA has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** Paragraph 15 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 15.

16. This Court also has personal jurisdiction over Defendant Aker BioMarine ASA because, on information and belief, Defendant Aker BioMarine ASA is the parent company for the other Aker entities, which are subsidiaries, and exercises considerable control over the other Aker entities. Aker BioMarine ASA has described itself in its 2024 Annual Report (attached as **Exhibit A**), together with the other Aker entities, as a "Group" and stated that "[t]he Group is a global supplier of krill-derived products…The Group purchases krill meal, which is then

-38-

processed into oil-products in the United States and then sold worldwide." 2024 Aker BioMarine Annual Report at 57 (**Ex. A**).

**ANSWER:** Answering Defendants admit that Exhibit A of the Complaint purports to be a copy of Aker BioMarine ASA's 2024 Annual Report. The 2024 Annual Report speaks for itself and is the best source for its content. Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 16.

17.    Alternatively, this Court may also exercise personal jurisdiction over Aker BioMarine ASA because the requirements of Federal Rule of Civil Procedure 4(k)(2) are met. Specifically, (a) Rimfrost's claims arise under federal law; (b) Aker BioMarine ASA is a foreign defendant not subject to personal jurisdiction in any state's courts of general jurisdiction; and (c) Aker BioMarine ASA has sufficient contacts with the United States as a whole, including but not limited to acting in concert with the other Aker entities with respect to the making, using, selling, and offering for sale of krill oil products in the United States and in Delaware, such that this Court's exercise of jurisdiction over Aker BioMarine ASA satisfies due process.

**ANSWER:** Paragraph 17 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 17.

18.    Personal jurisdiction also exists specifically over Aker BioMarine ASA because Aker BioMarine ASA has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** Paragraph 18 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action.

19.    This Court has personal jurisdiction over Defendant Lang Pharma Nutrition, Inc. because Lang Pharma Nutrition, Inc. has sufficient minimum contacts with this forum as a result of business conducted within the State of Delaware and this district. Personal jurisdiction also exists specifically over Lang Pharma Nutrition, Inc. because Lang Pharma Nutrition, Inc., directly or through subsidiaries, intermediaries, or joint ventures, makes, uses, offers for sale, sells, and/or imports krill oil products within this district that infringe the Patents-in-Suit, as

-39-

described more specifically below. Personal jurisdiction also exists specifically over Lang Pharma Nutrition, Inc. because Lang Pharma Nutrition, Inc. has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** Paragraph 19 states a legal conclusion to which no response is required. To the extent Paragraph 19 contains factual allegations, those factual allegations are directed to a non-answering party to which no response is required. To the extent Paragraph 19 contains allegations directed to Answering Defendants, denied.

20.     This Court has personal jurisdiction over Defendant NewRide LLC because NewRide LLC is incorporated in Delaware and has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

**ANSWER:** The allegations in paragraph 20 pertain to NewRide LLC, which no longer exists. The allegations in Paragraph 20 require no response from Answering Defendants. To the extent that paragraph 20 contains allegations as to Answering Defendants, denied.

21.     Further, this Court has personal jurisdiction over Aker by virtue of, *inter alia*, its presence in Delaware; having conducted business in Delaware; having derived revenue from conducting business in Delaware; having engaged in systematic and continuous contacts with the State of Delaware; previously consenting to personal jurisdiction in this Court (*see, e.g., Aker BioMarine Antarctic AS v. Olympic Holding AS et al,* 1:16-cv-00035 (D. Del. Jan 22, 2016)); and having taken advantage of the rights and protections provided by this Court, including having asserted claims in this jurisdiction (*see, e.g., Aker BioMarine Antarctic AS v. Olympic Holding AS et al,* 1:16-cv-00035 (D. Del. Jan 22, 2016)). Additionally, on information and belief, Aker, itself and through its affiliates and service providers, develops, manufactures, imports, markets, distributes, tests, uses, offers to sell, and/or sells its products and services related to krill oil throughout the United States, including in the District of Delaware, and therefore transacts business within the District of Delaware, and/or has engaged in systematic and continuous business contacts within the District of Delaware.

**ANSWER:** The court filings referenced in Paragraph 21 speak for themselves and are the best source for their content. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 21.

22.     Upon information and belief, the Aker entities are agents and/or alter egos of each other and are acting in concert with each other as a "Group" with respect to the making, using, selling, and offering for sale of krill oil products in the United States and in Delaware.

**ANSWER:** Paragraph 22 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 22.

23.     This Court further has personal jurisdiction over Aker for other reasons that will be presented to the Court if jurisdiction is challenged.

**ANSWER:** Paragraph 23 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants do not contest that the Court has personal jurisdiction over Answering Defendants solely for the purposes of this action. Answering Defendants deny any remaining allegations in Paragraph 23.

24.     Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Aker is subject to personal jurisdiction in this district, engages in business in this district, and has placed infringing products into the stream of commerce by shipping products into this district (and/or knowing that the products would be shipped into this district).

**ANSWER:** Paragraph 24 states legal conclusions to which no response is required. To the extent a response is required, for the purposes of this case and to conserve the resources of the parties and the Court, Answering Defendants do not contest venue in this Judicial District. Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 24. For the avoidance of doubt, Answering Defendants deny that Paragraph 24 states the proper test for venue in a patent infringement case.

25.     Venue is also proper in this district with respect to Aker for the same reasons that personal jurisdiction over Aker is proper in this district, as set forth above, including because Aker has committed acts of infringement in this district, and, upon information and belief, Aker will commit further acts of infringement in this district and, upon information and belief, has a regular and established place of business in this district.

**ANSWER:** Paragraph 25 states legal conclusions to which no response is required. To the extent a response is required, for the purposes of this case and to conserve the resources of the

-41-

parties and the Court, Answering Defendants do not contest venue in this Judicial District. Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 25.

26.     Venue is also proper in this district with respect to Defendants Aker BioMarine Antarctic US LLC, Aker BioMarine Manufacturing LLC, Aker BioMarine US Holding Inc., and NewRide LLC because these defendants reside in this district.

**ANSWER:** Paragraph 26 states legal conclusions to which no response is required. To the extent a response is required, for the purposes of this case and to conserve the resources of the parties and the Court, Answering Defendants do not contest venue in this Judicial District. Paragraph 26 also states allegations as to NewRide LLC, which no longer exists and to which no response is required. Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 26.

27.     Venue is also proper in this district with respect to Defendant Aker BioMarine ASA under the provisions of 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b) because, on information and belief, Aker BioMarine ASA is a company organized and existing under the laws of Norway and may be sued in any judicial district.

**ANSWER:** Paragraph 27 states legal conclusions to which no response is required. To the extent a response is required, for the purposes of this case and to conserve the resources of the parties and the Court, Answering Defendants do not contest venue in this Judicial District. Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 27.

28.     Further, venue is proper with respect to Aker for other reasons that will be presented to the Court if venue is challenged.

**ANSWER:** Paragraph 28 states legal conclusions to which no response is required. To the extent a response is required, for the purposes of this case and to conserve the resources of the parties and the Court, Answering Defendants do not contest venue in this Judicial District. Answering Defendants further deny that Rimfrost Techs. may supplement any claim of venue based on facts not alleged.

-42-

**THE PATENTS-IN-SUIT**

29.     The allegations above are incorporated herein by reference.

**ANSWER:** Answering Defendants repeat and incorporate here by reference their responses to the preceding paragraphs.

30.     U.S. Patent No. 9,814,256, titled "Method for Processing Crustaceans to Produce Low Fluoride/Low Trimethyl Amine Products Thereof," is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code by the United States Patent and Trademark Office ("USPTO") on November 14, 2017. The '256 patent issued from U.S. Patent Application No. 14/370,324, which is a national stage entry of International Patent Application No. PCT/IB2012/003004, filed December 21, 2012, and a continuation-in-part of U.S. Patent Application No. 13/342,664, filed on January 3, 2012, now U.S. Patent No. 8,557,297, which is a continuation-in-part of U.S. Application No. 13/063,488, filed as International Patent Application No. PCT/NO2009/000322 on September 14, 2009, now U.S. Patent No. 8,758,829. On January 13, 2025, Ex Parte Reexamination Request No. 90/019,810 was filed. On September 17, 2025, the USPTO issued a Ex Parte Reexamination Certificate confirming the patentability of claims 1–9, determining claims 10–14 to be patentable as amended, and adding a new and patentable claim 15. A true and correct copy of the '256 patent and *Ex Parte* Reexamination Certificate is attached to this Complaint as **Exhibit B**.

**ANSWER:** Paragraph 30 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants admit that Exhibit B of the Complaint purports to be a copy of United States Patent No. 9,814,256 (the "'256 patent"). Answering Defendants admit that the face of the '256 patent lists the title as "Method for Processing Crustaceans to Produce Low Fluoride/Low Trimethyl Amine Products Thereof," and November 14, 2017 as the issue date. To the extent a further response is required, Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 30, and therefore deny them.

31.     The '256 patent names Inge Bruheim, Mikko Griinari, Jon Reidar Ervik, Stig Rune Remoy, Even Remoy, and John Cameron as inventors. Rimfrost Technologies AS is the assignee of record and is the owner by assignment of all rights, title, and interest in the '256 patent. Rimfrost Technologies AS has the right to enforce the '256 patent and sue for infringement thereof.

-43-

**ANSWER:** Paragraph 31 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants admit that the face of the '256 patent lists Inge Bruheim, Mikko Griinari, Jon Reidar Ervik, Stig Rune Remoy, Even Remoy, and John Cameron as inventors.  To the extent a further response is required, Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31, and therefore deny them.

32.	Representative claim 1 of the '256 patent recites:

> A krill oil composition comprising a clear red color, phospholipids, less than 1 mg N/100g trimethyl amine and less than approximately 0.02% (w/w) trimethyl amine oxide.

**ANSWER:** Answering Defendants admit that Paragraph 32 purports to recite the language of claim 1 of the '256 patent.  The '256 patent speaks for itself and is the best source for its content.  Answering Defendants deny any remaining allegations in Paragraph 32.

33.	U.S. Patent No. 10,499,673, titled "Method for Processing Crustaceans to Produce Low Fluoride/Low Trimethyl Amine Products Thereof," is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code by the USPTO on December 10, 2019. The '673 patent issued from U.S. Patent Application No. 15/171,886, filed June 2, 2016, which is a continuation of U.S. Patent Application No. 14/370,324, filed as International Patent Application No. PCT/IB2012/003004 on December 21, 2012, now U.S. Patent No. 9,814,256, which is a continuation-in-part of U.S. Patent Application No. 13/342,664, filed on January 3, 2012, now U.S. Patent No. 8,557,297, which is a continuation-in-part of U.S. Patent Application No. 13/063,488, filed as International Patent Application No. PCT/NO2009/000322 on September 14, 2009, now U.S. Patent No. 8,758,829. A true and correct copy of the '673 patent is attached to this Complaint as **Exhibit C**.

**ANSWER:** Paragraph 33 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants admit that Exhibit C of the Complaint purports to be a copy of United States Patent No. 10,499,673 (the "'673 patent").  Answering Defendants admit that the face of the '673 patent lists the title as "Method for Processing Crustaceans to Produce Low Fluoride/Low Trimethyl Amine Products Thereof," and December 10, 2019 as the issue date.  To the extent a further response is required, Answering Defendants

-44-

lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 33, and therefore deny them.

34.    The '673 patent names Inge Bruheim, Stig Rune Remoy, and John Cameron as inventors. Rimfrost Technologies AS is the assignee of record and is the owner by assignment of all rights, title, and interest in the '673 patent. Rimfrost Technologies AS has the right to enforce the '673 patent and sue for infringement thereof.

**ANSWER:** Paragraph 34 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants admit that the face of the '673 patent lists Inge Bruheim, Stig Rune Remoy, and John Cameron as inventors.  To the extent a further response is required, Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34, and therefore deny them.

35.    Representative claim 17 of the '673 patent recites:

> An extracted crustacean oil comprising at least 40 wt % total phospholipids and less than 20 mg N-trimethylamine oxide/100 g of said crustacean oil and less than 1 mg N-trimethylamine/100 g of said crustacean oil, wherein said total phospholipids comprise at least 75 wt % phosphatidylcholine and at least 2% phosphatidylethanolamine of the total phospholipids.

**ANSWER:** Answering Defendants admit that Paragraph 35 purports to recite the language of claim 17 of the '673 patent.  The '673 patent speaks for itself and is the best source for its content.  Answering Defendants deny any remaining allegations in Paragraph 35.

## FACTUAL ALLEGATIONS AND BACKGROUND

36.    Rimfrost, together with its related entities, is a Norwegian biotech company that produces sustainable high quality krill products for human health and animal nutrition. Rimfrost, together with its related entities, uses its patented enzymatic hydrolysis technology to process krill offshore immediately after harvesting to produce a krill product that is rich in the marine omega-3 fatty acids docosahexaenoic acid (DHA) and eicosapentaenoic acid (EPA) and the powerful antioxidant, astaxanthin. This world-leading innovation means Rimfrost takes better care of krill nutrients and uses 30% less krill than most other companies, helping to guarantee the sustainability of Rimfrost krill products.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36, and therefore deny them.

37.     Aker describes itself as "the only krill supplier that controls the entire harvesting and production process." *Our Operations*, AKER BIOMARINE, https://www.akerbiomarine.com/operations (last visited Dec. 17, 2025) (**Ex. D**). On information and belief, Aker's supply chain begins with harvesting krill in Antarctic waters. Aker's wholly owned vessel *Antarctic Provider* delivers its krill products to a logistics hub in Montevideo, Uruguay. From Montevideo, Aker's krill products are transported to Houston, Texas, for further processing and sale, or sold directly to worldwide customers. *Id.*; Hank Schultz, *Aker Hits High Gear in Krill Oil Innovation with Mature Houston Facility*, SUPPLYSIDE SUPPLEMENT JOURNAL (Mar. 11, 2024), https://www.supplysidesj.com/supplements/aker-hits-high-gear-in-krill-oil-innovation-with-mature-houston-facility (**Ex. E).**

**ANSWER:** Answering Defendants admit that Paragraph 37 purports to summarize or characterize the contents of the webpage located at https://www.akerbiomarine.com/operations, which speaks for itself.  Answering Defendants also admit that Exhibits D and E to Rimfrost Techs.'s Complaint purport to be copies of the referenced webpage and publication by Hank Schultz in SupplySide Supplement Journal, respectively.  To the extent the allegations set forth in Paragraph 37 purport to summarize or characterize the contents of Exhibits D and E, those Exhibits speak for themselves.  Answering Defendants otherwise deny the allegations in Paragraph 37.

38.     Aker "is present all over the world from Australia to the US," and maintains at least two United States-based locations, as indicated in the graphic below.



Aker BioMarine Annual Report 2024 at 7 (**Ex. A).**

**ANSWER:** Answering Defendants admit that Paragraph 38 purports to summarize or characterize the contents of the Aker BioMarine Annual Report 2024, which speaks for itself.

-46-

Answering Defendants also admit that Exhibit A to Rimfrost Techs.'s Complaint purports to be a copy of the Aker BioMarine Annual Report 2024. To the extent the allegations set forth in Paragraph 38 purport to summarize or characterize the contents of Exhibit A, the Exhibit speaks for itself. Answering Defendants otherwise deny the allegations in Paragraph 38.

39. Aker claims responsibility for more than "70% of global krill oil production" at its "[p]urpose built oil extraction plant in Houston, TX." *Id.* at 11.

**ANSWER:** Answering Defendants admit that Paragraph 39 purports to summarize or characterize the contents of the Aker BioMarine Annual Report 2024, which speaks for itself. Answering Defendants also admit that Exhibit A to Rimfrost Techs.'s Complaint purports to be a copy of the Aker BioMarine Annual Report 2024. To the extent the allegations set forth in Paragraph 39 purport to summarize or characterize the contents of Exhibit A, the Exhibit speaks for itself. Answering Defendants otherwise deny the allegations in Paragraph 39.

40. On information and belief, Aker manufactures, offers for sale, and sells its Superba2®, Superba Boost®, and Superba SC40™ krill oils (collectively, "Superba™ krill oil") in the United States. *See, e.g.*, SUPERBAKRILL®, https://www.superbakrill.com/ (last visited Dec. 17, 2025) (**Ex. F**); *Superior Krill Oil Products From Antarctica*, SUPERBAKRILL®, https://www.superbakrill.com/products (last visited Dec. 17, 2025) (**Ex. G**); *Halal Krill Oil*, SUPERBAKRILL®, https://www.superbakrill.com/halal-krill-oil (last visited Dec. 17, 2025) (**Ex. H**). On information and belief, Aker supplies its Superba™ krill oil to various entities worldwide and for incorporation into private label products that are marketed and sold in the United States. These private label products include, without limitation, CVS Health Corporation's ("CVS") CVS Health® Antarctic Pure Krill Oil Omega-3 ("CVS krill oil"), the Schiff Vitamins ("Schiff") product Schiff MegaRed® Superior Omega-3 Krill Oil ("MegaRed krill oil"), Purasana N.V.'s ("Purasana") Superba Boost™ Krill Olie ("Purasana krill oil") and California Gold Nutrition's ("California Gold") Premium Krill Oil ("California Gold krill oil"). On information and belief, CVS krill oil and MegaRed krill oil are formulated with Superba2®, Purasana krill oil is formulated with Superba Boost®, and California Gold krill oil is available formulated with either Superba2® or Superba Boost®. These products, including Aker's Superba™ krill oil generally, and any product that incorporates Aker's Superba™ krill oil, are collectively referred to in this Complaint as the "Accused Products."

**ANSWER:** Answering Defendants admit that Paragraph 40 purports to summarize or characterize the contents of the webpages located at https://www.superbakrill.com/,

https://www.superbakrill.com/products, and https://www.superbakrill.com/halal-krill-oil, each of which speaks for itself.  Answering Defendants also admit that Exhibits F, G, and H to Rimfrost Techs.'s Complaint purport to be copies of those webpages.  To the extent the allegations set forth in Paragraph 40 purport to summarize or characterize the contents of Exhibits F, G, and H, those Exhibits speak for themselves. Answering Defendants otherwise deny the allegations in Paragraph 40.

41.    **Phospholipids.** On information and belief, the Accused Products comprise or include krill oil comprising phospholipids. For example, Aker describes its Superba™ krill oil as comprising "essential omega-3 (EPA & DHA), choline, phospholipids and astaxanthin." SUPERBAKRILL®, https://www.superbakrill.com/ (last visited Dec. 17, 2025) (**Ex. F**). Similarly, the ingredient list for a representative CVS krill oil product includes "Phospholipids: 130 mg," and the product packaging explains that it contains "Phospholipids for Easy Absorption" (see below).



*CVS Antarctic Krill Oil Omega-3 Softgels*, CVS PHARMACY, https://www.cvs.com/shop/cvs-antarctic-krill-oil-omega-3-softgels-60-ct-prodid-717912 (last visited Dec. 17, 2025) (**Ex. I**). Likewise, the Supplement Facts listed on the packaging of a representative MegaRed krill oil product shows that the product includes 130 mg of phospholipids. Elsewhere, the product packaging explains that the krill oil product "carries its Omega-3 in a **phospholipid** form which **helps absorption** in the human body" (see below).



*MegaRed 350mg Superior Omega-3 Krill Oil Softgels*, SCHIFF, https://www.schiffvitamins.com/collections/omega-3-fish-oil-supplements/prod-ucts/megared-350mg-omega3-krill-oil (last visited Dec. 17, 2025) (**Ex. J**) (emphasis in original). The packaging for a representative Purasana krill oil product also lists phospholipids as an ingredient (see below, "fosfolipiden" in Dutch).



*Krill Oil 500 mg 60 Caps*, PURASANA, https://purasana.com/en/krill-oil (last visited Dec. 20, 2025) (**Ex. K**). And the packaging for a representative California Gold krill oil product also lists phospholipids as an ingredient (see below).

 

*California Gold Nutrition, Premium Krill Oil with SUPERBABoost, 1,000 mg, 60 Fish Gelatin Softgels*, IHERB, https://www.iherb.com/pr/california-gold-nutrition-premium-krill-oil-with-superbaboost-1-000-mg-60-fish-gelatin-softgels/100010 (last visited Dec. 17, 2025) (**Ex. L**).

**ANSWER:** Answering Defendants admit that Paragraph 41 purports to summarize or characterize the contents of the webpage located at https://www.superbakrill.com/ (Exhibit F), the CVS product packaging and webpage (Exhibit I), and the MegaRed product packaging and webpage (Exhibit J), each of which speaks for itself.  To the extent the allegations set forth in Paragraph 41 purport to summarize or characterize the contents of Exhibits F, I, and J, those Exhibits speak for themselves. Answering Defendants otherwise deny the allegations in Paragraph 41.

42.     **At Least 40 wt % Total Phospholipids.** On information and belief, at least the Purasana krill oil and California Gold krill oil products comprise extracted crustacean oil comprising at least 40 wt % total phospholipids. For example, the packaging for a representative Purasana krill oil product lists 330 mg phospholipids per capsule and 1180 mg Superba Boost™ krill oil per 2 capsules as ingredients (see below). 1180 mg / 2 = 590 mg Superba Boost™ krill oil per capsule. 330 mg phospholipids per capsule / 590 mg krill oil per capsule = 56% phospholipids by weight.



*Krill Oil 500 mg 60 Caps*, PURASANA, https://purasana.com/en/krill-oil (last visited Dec. 20, 2025) (**Ex. K**). And the packaging for a representative California Gold krill oil product lists 560 mg phospholipids per 1000 mg Superba Boost® krill oil concentrate as an ingredient (see below). 560 mg / 1000 mg = 56% by weight.




*California Gold Nutrition, Premium Krill Oil with SUPERBABoost, 1,000 mg, 60 Fish Gelatin Softgels*, IHERB, https://www.iherb.com/pr/california-gold-nutrition-premium-krill-oil-with-superbaboost-1-000-mg-60-fish-gelatin-softgels/100010 (last visited Dec. 17, 2025) (**Ex. L**).

Additionally, Aker's own Superba Boost® krill oil laboratory analysis, submitted to the European Patent Office, (attached as **Exhibit M**), shows 57 g phospholipids per 100 g Superba Boost® krill oil (see below). 57 g / 100 g = 57% by weight.

## CERTIFICATE OF ANALYSIS

### IDENTIFICATION:

- Product name: SUPERBA Boost ® - 25 kg
- Product number: 72031011
- Batch number: A103352
- Manufacturing date: 25/JUN/2023
- Shelf life / retest date: 24/JUN/2025
- Country of origin: United States of America
- Manufacturing site: Aker BioMarine Manufacturing L.L.C. , 4494 Campbell Road, Houston, TX 77041, US
- Harvesting position: 62°37S 55°16W

### ANALYTICAL SPECIFICATION:

| PARAMETER | METHOD/INSTRUMENT | ACTUAL VALUE | LIMIT | UNIT |
|---|---|---|---|---|
| **PHYSICAL / CHEMICAL** | | | | |
| Appearance | Visual | Red viscous oil | Red viscous oil | |
| Identification | AKBM-AM-02 | Conforms | Conforms | |
| Viscosity at 35°C | Rotational viscometer | 1858 | <=2000 | mPa·s |
| TMA + TMAO | IC / Conway | <2 | Report value | mgN/100 g |
| Salts | IC | <0.1 | <=0.5 | g/100 g |
| Total phospholipids | ³¹P NMR | 57 | >=56 | g/100 g |
| Phosphatidylcholines | 1) ³¹P NMR | 54 | >=48 | g/100 g |

Certificate of Analysis at 1 (**Ex. M**). This Certificate of Analysis also lists Aker's own internal, quality-control, specification limits for Superba Boost® krill oil. Aker requires at least 56 g total phospholipids per 100 g Superba Boost® krill oil. Certificate of Analysis at 1 (**Ex. M**, Limit column). 56 g / 100 g = 56% by weight. With 56% total phospholipids, both Purasana krill oil and California Gold krill oil meet this specification. Additionally, another Aker Superba Boost® krill oil laboratory analysis, included in U.S. Patent Application 18/381,439, and published on May 16, 2024 as U.S. Patent Application Publication No. 2024/0156876, (attached as **Exhibit N**), shows 58 g phospholipids per 100 g Superba Boost® krill oil (see below). 58 g / 100 g = 58% by weight.

### TABLE 3

**Superba Boost ® Specification**

| Parameter | Method | Actual Value | Unit |
|---|---|---|---|
| Appearance | Visual | Red viscous oil | |
| Identification | GC-FAME | Conforms | |
| TMA + TMAO | Conway | <2 | mgN/100 g |
| Salts | IPC/IC | 0.1 | g/100 g |
| Total phospholipids | 31P NMR | 58 | g/100 g |
| Phosphatidylcholine | 31P NMR | 52 | g/100 g |
| Choline | 31P NMR | 7 | g/100 g |
| Total Omega-3 fatty acids | AKBM-AM-02 | 31 | g/100 g |
| EPA | AKBM-AM-02 | 16 | g/100 g |
| DHA | AKBM-AM-02 | 9 | g/100 g |
| Peroxide value | AOCS Cd 8b-90 | 3 | g/100 g |
| Astaxanthin | FCC/USP-NF (UV) | 200 | µg/g |
| Astaxanthin esterification (ID) | LC | Conforms | |

U.S. Pat. App. Pub. No. 2024/0156876 at 14, Table 3 (**Ex. N**). Additionally, another Aker Superba Boost® krill oil laboratory analysis, performed via nuclear magnetic resonance, included in International Patent Application No. PCT/IB2023/056584, and published on January 4, 2024 as

| Batch Size | | | Superba Boost | Lysoveta |
|---|---|---|---|---|
| **Parameter** | **Method description** | **Unit** | | |
| Appearance | Visual | | Red viscous oil | Red viscous oil |
| Identification | GC FAME | | Conforms | Conforms |
| Viscosity at 35°C | Rotational Viscometer | | 1937,44 | 769,4 |
| TMAO+TMAO | Ion chromatography | mgN/100g | <2 | <6,67 |
| Na+ (g/100g) | Ion chromatography | g/100g | 0,137 | |
| **LIPID COMPOSITION** | | | | |
| Total phospholipids | 31P NMR | g/100g | 58,54 | 43,87 |
| PC | 31P NMR | g/100g | 47,78 | 8,37 |

WO 2024/003711, (attached as **Exhibit O**), shows 58.54 g phospholipids per 100 g Superba Boost® krill oil (see below). 58.54 g / 100 g = 58.54% by weight. WO 2024/003711 at 29, Table 1 (**Ex. O**).

**ANSWER:** Answering Defendants admit that Paragraph 42 purports to summarize or characterize the contents of the Purasana product packaging and webpage (Exhibit K), the

California Gold product listing (Exhibit L), the Certificate of Analysis submitted to the European Patent Office (Exhibit M), U.S. Patent Application Publication No. 2024/0156876 (Exhibit N), and International Patent Application Publication No. WO 2024/003711 (Exhibit O), each of which speaks for itself.  To the extent the allegations set forth in Paragraph 42 purport to summarize or characterize the contents of Exhibits K, L, M, N, and O, those Exhibits speak for themselves. Answering Defendants otherwise deny the allegations in Paragraph 42.

43.    **Clear Red Color.** On information and belief, at least the CVS krill oil and MegaRed krill oil products comprise a clear red color. *See, e.g.*, *What is Krill Oil?*, SUPERBAKRILL®, available at https://www.superbakrill.com/krill-oil/what-is-krill-oil (last visited Dec. 17, 2025) (**Ex. P)** (explaining that astaxanthin in Superba™ krill oil "gives krill oil its beautiful red color"); photos of representative Accused Products (see below).

| Representative Accused Product | Photo |
| --- | --- |
| Superba™ krill oil[5] | |
| CVS krill oil[6] | |

---

[5] *Superior Krill Oil Products From Antarctica*, SUPERBAKRILL®, https://www.super-bakrill.com/products (last visited Dec. 17, 2025) (**Ex. G)**.
[6] *CVS Antarctic Krill Oil Omega-3 Softgels*, CVS PHARMACY, https://www.cvs.com/shop/cvs-antarctic-krill-oil-omega-3-softgels-60-ct-prodid-717912 (last visited Dec. 17, 2025) (**Ex. I)**.

| | |
|---|---|
| MegaRed krill oil[7] |  |

**ANSWER:** Answering Defendants admit that Paragraph 43 purports to summarize or characterize the contents of the webpage located at https://www.superbakrill.com/krill-oil/what-is-krill-oil (Exhibit P) and photographs of representative accused products, each of which speaks for itself. To the extent the allegations set forth in Paragraph 43 purport to summarize or characterize the contents of Exhibit P, the Exhibit speaks for itself. Answering Defendants otherwise deny the allegations in Paragraph 43.

44. **TMA and TMAO.** On information and belief, at least the MegaRed krill oil, CVS krill oil, Purasana krill oil, and California Gold krill oil Accused Products comprise less than 1 mg N/100g trimethyl amine ("TMA") and less than 20 mg N/100g or 0.02% (w/w) trimethyl amine oxide ("TMAO"). On information and belief, Aker uses a method of processing that removes TMA and TMAO from its Superba™ krill oil. *See, e.g.,* Lena Burri, *Krill Oil Concentrate* at 13 (**Ex. Q**) (explaining that Aker's Flexitech™ ion-exchange technology "reduces the TMA/TMAO (an osmolyte and protein stabilizer) and the salt content of the oil," resulting in "a product with a concentrated amount of omega-3 fatty acids, phospholipids, and astaxanthin, which is almost taste- and smell-free"); WholeFoods Magazine Staff, *Krill Oil Formulators See New Tech from Aker BioMarine*, WHOLEFOODS MAGAZINE (Mar. 24, 2016), https://www.wholefoodsmagazine.com/articles/7814-krill-oil-formula-tors-see-new-tech-from-aker-biomarine (**Ex. R**) ("Aker says the new technology will allow it to bump up levels of certain desirable krill oil components (like phospholipids, astaxanthin and omega-3s) while stripping the oil of the salts (like trimethylamine N-oxide) that give the oil an unwanted 'fishy' odor and taste."). For example, the packaging for a representative CVS krill oil product explains that "salts (including TMAO responsible for 'fishy' odor) are removed from Superba2® krill oil" (see below).

---

[7] *MegaRed 350mg Superior Omega-3 Krill Oil Softgels*, SCHIFF, https://www.schiffvita-mins.com/collections/omega-3-fish-oil-supplements/products/megared-350mg-omega3-krill-oil (last visited Dec. 17, 2025) (**Ex. J**).



*CVS Antarctic Krill Oil Omega-3 Softgels*, CVS PHARMACY, https://www.cvs.com/shop/cvs-antarctic-krill-oil-omega-3-softgels-60-ct-prodid-717912 (last visited Dec. 17, 2025), (**Ex. I**). Likewise, Aker's own Superba Boost® krill oil laboratory analysis, submitted to the European Patent Office, (attached as **Exhibit M**), reports less than 2 mgN/100g for TMA and TMAO combined for Superba Boost® krill oil (see below). Less than 2 mgN / 100 g = less than 0.02% (w/w).

## CERTIFICATE OF ANALYSIS

### IDENTIFICATION:

- Product name:           SUPERBA Boost® - 25 kg
- Product number:         72031011
- Batch number:           A103352
- Manufacturing date:     25/JUN/2023
- Shelf life / retest date:  24/JUN/2025
- Country of origin:       United States of America
- Manufacturing site:     Aker BioMarine Manufacturing L.L.C. , 4494 Campbell Road, Houston, TX 77041, US
- Harvesting position:    62°37S 55°16W

### ANALYTICAL SPECIFICATION:

| PARAMETER | METHOD/INSTRUMENT | ACTUAL VALUE | LIMIT | UNIT |
|---|---|---|---|---|
| **PHYSICAL / CHEMICAL** | | | | |
| Appearance | Visual | Red viscous oil | Red viscous oil | |
| Identification | AKBM-AM-02 | Conforms | Conforms | |
| Viscosity at 35°C | Rotational viscometer | 1858 | <=2000 | mPa·s |
| TMA + TMAO | IC / Conway | <2 | Report value | mgN/100 g |
| Salts | IC | <0.1 | <=0.5 | g/100 g |
| Total phospholipids | 31P NMR | 57 | >=56 | g/100 g |
| Phosphatidylcholines | 1) 31P NMR | 54 | >=48 | g/100 g |

Certificate of Analysis at 1 (**Ex. M**). Additionally, another Aker Superba Boost® krill oil laboratory analysis, included in U.S. Patent Application 18/381,439, and published on May 16, 2024 as U.S. Patent Application Publication No. 2024/0156876, (attached as **Exhibit N**), shows less than 2 mgN/100g for TMA and TMAO combined for Superba Boost® krill oil (see below). Less than 2 mgN / 100 g = less than 0.02% (w/w).

## TABLE 3

### Superba Boost ® Specification

| Parameter | Method | Actual Value | Unit |
|---|---|---|---|
| Appearance | Visual | Red viscous oil | |
| Identification | GC-FAME | Conforms | |
| TMA + TMAO | Conway | <2 | mgN/100 g |
| Salts | IPC/IC | 0.1 | g/100 g |
| Total phospholipids | 31P NMR | 58 | g/100 g |
| Phosphatidylcholine | 31P NMR | 52 | g/100 g |
| Choline | 31P NMR | 7 | g/100 g |
| Total Omega-3 fatty acids | AKBM-AM-02 | 31 | g/100 g |
| EPA | AKBM-AM-02 | 16 | g/100 g |
| DHA | AKBM-AM-02 | 9 | g/100 g |
| Peroxide value | AOCS Cd 8b-90 | 3 | g/100 g |
| Astaxanthin | FCC/USP-NF (UV) | 200 | µg/g |
| Astaxanthin esterification (ID) | LC | Conforms | |

U.S. Pat. App. Pub. No. 2024/0156876 at 14, Table 3 (**Ex. N)**. Additionally, another Aker Superba Boost® krill oil laboratory analysis, included in International Patent Application No. PCT/IB2023/056584, and published on January 4, 2024 as WO 2024/003711, (attached as **Exhibit O**), shows less than 2 mgN/100g for TMA and TMAO combined for Superba Boost® krill oil (see below). Less than 2 mgN / 100 g = less than 0.02% (w/w).

| | | | Superba Boost | Lysoveta |
|---|---|---|---|---|
| Batch Size | | | | |
| Parameter | Method description | Unit | | |
| Appearance | Visual | | Red viscous oil | Red viscous oil |
| Identification | GC FAME | | Conforms | Conforms |
| Viscosity at 35°C | Rotational Viscometer | | 1937,44 | 769,4 |
| TMAO+TMAO | Ion chromatography | mgN/100g | <2 | <6,67 |
| Na+ (g/100g) | Ion chromatography | g/100g | 0,137 | |
| LIPID COMPOSITION | | | | |
| Total phospholipids | 31P NMR | g/100g | 58,54 | 43,87 |
| PC | 31P NMR | g/100g | 47,78 | 8,37 |

WO 2024/003711 at 29, Table 1 (**Ex. O**). Additionally, an analysis performed by an external laboratory confirms that tested representative Superba2® Accused Products, MegaRed krill oil and CVS krill oil, contain less than 1 mg N/100g TMA as well as less than 0.02% (w/w) TMAO. And an analysis performed by an external laboratory of a representative Superba Boost® product, Purasana krill oil, shows it also contains less than 1 mg N/100g TMA as well as less than 0.02% (w/w) TMAO.

**ANSWER:** Answering Defendants admit that Paragraph 44 purports to summarize or characterize the contents of a publication by Lena Burri (Exhibit Q), a WholeFoods Magazine article (Exhibit R), the CVS product packaging and webpage (Exhibit I), the Certificate of Analysis submitted to the European Patent Office (Exhibit M), U.S. Patent Application Publication No. 2024/0156876 (Exhibit N), and International Patent Application Publication No. WO 2024/003711 (Exhibit O), each of which speaks for itself. To the extent the allegations set forth in Paragraph 44 purport to summarize or characterize the contents of Exhibits Q, R, I, M, N, and O, those Exhibits speak for themselves. Answering Defendants otherwise deny the allegations in Paragraph 44.

45.    **Phosphatidylcholine and Phosphatidylethanolamine.** On information and belief, at least the Purasana krill oil and California Gold krill oil Accused Products comprise at least 40 wt % total phospholipids (see above), wherein the total phospholipids comprise at least 75 wt % phosphatidylcholine and at least 2% phosphatidylethanolamine of the total phospholipids. For example, Aker's own Superba Boost® krill oil laboratory analysis, submitted to the European Patent Office (attached as **Exhibit M**), shows 57 g total phospholipids and 54 g phosphatidylcholines per 100 g Superba Boost® krill oil (see below). 54 g / 57 g = 95% by weight phosphatidylcholines in the total phospholipids.

## CERTIFICATE OF ANALYSIS

**IDENTIFICATION:**

| | |
|---|---|
| • Product name: | SUPERBA Boost B - 25 kg |
| • Product number: | 72031011 |
| • Batch number: | A103352 |
| • Manufacturing date: | 25/JUN/2023 |
| • Shelf life / retest date: | 24/JUN/2025 |
| • Country of origin: | United States of America |
| • Manufacturing site: | Aker BioMarine Manufacturing L.L.C. , 4494 Campbell Road, Houston, TX 77041, US |
| • Harvesting position: | 62°37S 55°16W |

**ANALYTICAL SPECIFICATION:**

| PARAMETER | METHOD/INSTRUMENT | ACTUAL VALUE | LIMIT | UNIT |
|---|---|---|---|---|
| **PHYSICAL / CHEMICAL** | | | | |
| Appearance | Visual | Red viscous oil | Red viscous oil | |
| Identification | AKBM-AM-02 | Conforms | Conforms | |
| Viscosity at 35°C | Rotational viscometer | 1858 | <=2000 | mPa·s |
| TMA + TMAO | IC / Conway | <2 | Report value | mgN/100 g |
| Salts | IC | <0.1 | <=0.5 | g/100 g |
| Total phospholipids | ³¹P NMR | 57 | >=56 | g/100 g |
| Phosphatidylcholines | 1) ³¹P NMR | 54 | >=48 | g/100 g |

Certificate of Analysis at 1 (**Ex. M**). Additionally, another Aker Superba Boost® krill oil laboratory analysis, included in U.S. Patent Application 18/381,439 and published on May 16, 2024 as U.S. Patent Application Publication No. 2024/0156876, (attached as **Exhibit N**), shows 58 g total phospholipids and 52 g phosphatidylcholines per 100 g Superba Boost® krill oil (see below). 52 g / 58 g = 90% by weight phosphatidylcholines in the total phospholipids.

## TABLE 3

### Superba Boost ® Specification

| Parameter | Method | Actual Value | Unit |
|---|---|---|---|
| Appearance | Visual | Red viscous oil | |
| Identification | GC-FAME | Conforms | |
| TMA + TMAO | Conway | <2 | mgN/100 g |
| Salts | IPC/IC | 0.1 | g/100 g |
| Total phospholipids | 31P NMR | 58 | g/100 g |
| Phosphatidylcholine | 31P NMR | 52 | g/100 g |
| Choline | 31P NMR | 7 | g/100 g |
| Total Omega-3 fatty acids | AKBM-AM-02 | 31 | g/100 g |
| EPA | AKBM-AM-02 | 16 | g/100 g |
| DHA | AKBM-AM-02 | 9 | g/100 g |
| Peroxide value | AOCS Cd 8b-90 | 3 | g/100 g |
| Astaxanthin | FCC/USP-NF (UV) | 200 | µg/g |
| Astaxanthin esterification (ID) | LC | Conforms | |

U.S. Pat. App. Pub. No. 2024/0156876 at 14, Table 3 (**Ex. N**). Additionally, another Aker Superba Boost® krill oil laboratory analysis, performed via nuclear magnetic resonance, included in International Patent Application No. PCT/IB2023/056584, and published on January 4, 2024 as WO 2024/003711, (attached as **Exhibit O**), shows 58.54 g total phospholipids and 47.78 g phosphatidylcholines ("PC") per 100 g Superba Boost® krill oil (see below). 47.78 g / 58.54 g = 81.62% by weight phosphatidylcholines in the total phospholipids.

| Batch Size | | | Superba Bpost | Lysovita |
|---|---|---|---|---|
| Parameter | Method description | Unit | | |
| Appearance | Visual | | Red viscous oil | Red viscous oil |
| Identification | GC FAME | | Conforms | Conforms |
| Viscosity at 35°C | Rotational Viscometer | | 1937,44 | 769,4 |
| TMAO+TMAO | Ion chromatography | mgN/100g | <2 | <6,67 |
| Na+ (g/100g) | Ion chromatography | g/100g | 0,137 | |
| **LIPID COMPOSITION** | | | | |
| Total phospholipids | 31P NMR | g/100g | 58,54 | 43,87 |
| PC | 31P NMR | g/100g | 47,78 | 8,37 |

WO 2024/003711 at 29, Table 1 (**Ex. O**). Additionally, a third-party, high-performance liquid chromatography analysis of Superba Boost® krill oil was published in MARINE DRUGS on July 27, 2022 (attached as **Exhibit S**).[8] The authors analyzed Superba Boost® krill oil produced by Aker BioMarine at its Houston, Texas, plant, and found 51.2% (w/w) phospholipids comprising

---

[8] Seung-Min Hwang, et al., *Preventive and Therapeutic Effects of Krill Oil on Obesity and Obesity-Induced Metabolic Syndromes in High-Fat Diet-Fed Mice*, 20 Marine Drugs 1, 12–13 (2022) (available at https://doi.org/10.3390/md20080483) (**Ex. S**).

44.9% phosphatidylcholine and 2.1% phosphatidylethanolamine. 44.9% / 51.2% = 87.7% by weight phosphatidyl-choline in the total phospholipids. 2.1% / 51.2% = 4.1% by weight phosphatidylethanolamine in the total phospholipids.

**ANSWER:** Answering Defendants admit that Paragraph 45 purports to summarize or characterize the contents of the Certificate of Analysis submitted to the European Patent Office (Exhibit M), U.S. Patent Application Publication No. 2024/0156876 (Exhibit N), International Patent Application Publication No. WO 2024/003711 (Exhibit O), and a third-party publication in Marine Drugs (Exhibit S), each of which speaks for itself. To the extent the allegations set forth in Paragraph 45 purport to summarize or characterize the contents of Exhibits M, N, O, and S, those Exhibits speak for themselves. Answering Defendants otherwise deny the allegations in Paragraph 45.

46.     On information and belief, the Accused Products are manufactured in the United States, namely at Aker's Houston, Texas, production plant.

**ANSWER:** Answering Defendants admit that they develop, manufacture, and sell krill oil products in the United States. Except as expressly admitted, Answering Defendants deny the remaining allegations of Paragraph 46.

47.     On information and belief, the Accused Products are offered for sale and sold in the United States, including in this district, and worldwide. In 2024, Aker's Human Health Ingredients segment, "dedicated to developing and supplying krill and algae-based ingredients for dietary supplements" and whose product port-folio includes "Superba Krill Oil, a phospholipid-bound omega-3 supplement," delivered strong growth in the United States. Aker BioMarine Annual Report 2024 at 46 (**Ex. A**). Superba krill oil sales increased 15% year-over-year with the Human Health Ingredients segment growing to $98.0 million in revenue. *Id.*

**ANSWER:** Answering Defendants admit that Paragraph 47 purports to summarize or characterize the contents of the Aker BioMarine Annual Report 2024, which speaks for itself. Answering Defendants also admit that Exhibit A to Rimfrost Techs.'s Complaint purports to be a copy of the Aker BioMarine Annual Report 2024. To the extent the allegations set forth in

Paragraph 47 purport to summarize or characterize the contents of Exhibit A, the Exhibit speaks

for itself.  Answering Defendants otherwise deny the allegations in Paragraph 47.

48.     On information and belief, at least the CVS krill oil and MegaRed krill oil
products comprise a krill oil composition comprising a clear red color, phospholipids, less than 1
mg N/100g TMA and less than approximately 0.02% (w/w) TMAO, and thus infringe at least
claim 1 of the '256 patent.

**ANSWER:** Paragraph 48 states legal conclusions to which no response is required.  To the

extent a response is required, Answering Defendants deny the allegations in Paragraph 48.

49.     On information and belief, at least the Purasana krill oil and California Gold krill
oil products comprise an extracted crustacean oil comprising at least 40 wt % total
phospholipids, less than 20 mg N-trimethylamine oxide/100g of the crustacean oil and less than
1 mg N-trimethylamine/100 g of the crustacean oil, wherein the total phospholipids comprise at
least 75 wt % phosphatidylcholine and at least 2% phosphatidylethanolamine of the total
phospholipids, and thus infringe at least claim 17 of the '673 patent.

**ANSWER:** Paragraph 49 states legal conclusions to which no response is required.  To the

extent a response is required, Answering Defendants deny the allegations in Paragraph 49.

50.     On information and belief, Aker, through its sales, manufacturing, and processing
operations related to the Accused Products, has willfully infringed, literally or through the
doctrine of equivalents, and continues to willfully infringe, literally or through the doctrine of
equivalents, and to induce others to infringe, and/or contributorily infringe the Patents-in-Suit.

**ANSWER:** Paragraph 50 states legal conclusions to which no response is required.  To the

extent a response is required, Answering Defendants deny the allegations in Paragraph 50.

## COUNT I

### Patent Infringement of U.S. Patent No. 9,814,256

51.     The allegations above are incorporated herein by reference.

**ANSWER:** Answering Defendants repeat and incorporate here by reference their

responses to the preceding paragraphs.

52.     Aker has knowledge of the '256 patent as demonstrated by at least its claimed
analysis of the patent and its filing of *Ex Parte* Reexamination Request No. 90/019,810. *See
generally* Matthew Wilcox, *Aker Move Sparks New Chapter in Decade-Long Krill War*,
SALMONBUSINESS (Jan. 10, 2025), https://www.salmon-business.com/aker-move-sparks-

new-chapter-in-decade-long-krill-war/ (**Ex. T).** Aker thus has knowledge of its infringement of the '256 patent.

**ANSWER:** Answering Defendants admit that they submitted Ex Parte Reexamination Request No. 90/019,810 to the USPTO. To the extent a further response is required, the referenced publication speaks for itself and is the best source for its content. Answering Defendants deny any remaining allegations in Paragraph 52.

53.    Aker has at no time been licensed under the '256 patent.

**ANSWER:** Paragraph 53 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 53.

54.    Aker has directly infringed, and is currently directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '256 patent, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering to sell in the United States, and/or importing into the United States infringing products, including without limitation the Accused Products.

**ANSWER:** Paragraph 54 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 54.

55.    By way of example, at least the CVS krill oil and MegaRed krill oil products infringe at least claim 1 of the '256 patent.

**ANSWER:** Paragraph 55 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 55.

56.    On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises a krill oil composition. *See supra* ¶ 40.

**ANSWER:** Paragraph 56 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 56.

57.    On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises a clear red color. *See supra* ¶ 43.

**ANSWER:** Paragraph 57 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 57.

58.     On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises phospholipids. *See supra* ¶ 41.

**ANSWER:** Paragraph 58 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 58.

59.     On information and belief, each of the CVS krill oil and MegaRed krill oil products comprises a krill oil composition with less than 1 mg N/100g TMA and less than approximately 0.02% (w/w) TMAO. *See supra* ¶ 44.

**ANSWER:** Answering Defendants lack knowledge sufficient to form a belief as to the allegations in Paragraph 59 and therefore deny them.

60.     The claim charts attached hereto as **Exhibits U and V** identify on a limitation-by-limitation basis where each limitation of claim 1 of the '256 patent is found within the CVS krill oil and MegaRed krill oil products, respectively.

**ANSWER:** Answering Defendants admit that Exhibits U and V of the Complaint purport to be claim charts relating to the '256 patent.  Answering Defendants deny any remaining allegations in Paragraph 60.

61.     Aker induces infringement of the '256 patent, in violation of 35 U.S.C. § 271(b). Aker has knowledge of the '256 patent. Aker instructs and induces its customers, e.g., CVS and MegaRed, to directly infringe the '256 patent. Aker has known or should have known that its acts would cause its customers to infringe the '256 patent.

**ANSWER:** Paragraph 61 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 61.

62.     On information and belief, Aker contributorily infringes the '256 patent, in violation of 35 U.S.C. § 271(c). Aker has knowledge of the '256 patent. Aker has sold or supplied components (e.g., Superba™ krill oil) that form a significant part of the invention described in the '256 patent. On information and belief, Aker knows that the Superba™ krill oil is specially made or adapted for use in infringing the '256 patent, that Superba™ krill oil is not a staple article or commodity of commerce, and that Superba™ krill oil is not suitable for substantial noninfringing use.

**ANSWER:** Paragraph 62 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 62.

63.     Aker's infringement of the '256 patent has been willful.

**ANSWER:** Paragraph 63 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 63.

64.     As a direct and proximate result of Aker's willful infringement of the '256 patent, Rimfrost has been and will continue to be irreparably damaged and deprived of its rights in the '256 patent in amounts not yet determined, and for which Rimfrost is entitled to relief.

**ANSWER:** Paragraph 64 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 64.

65.     On information and belief, Aker has acted with full knowledge of the '256 patent and without a reasonable basis for believing that Aker would not be liable for direct infringement, active inducement of infringement, and/or contribution to the infringement by others of the '256 patent. On information and belief, the direct and indirect infringement by Aker of the '256 patent was and is willful. Aker's conduct renders this case "exceptional" under 35 U.S.C. § 285.

**ANSWER:** Paragraph 65 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 65.

66.     Rimfrost has been and will be substantially and irreparably damaged by Aker's infringement of the '256 patent. Unless Aker is enjoined from directly infringing, actively inducing infringement of, and contributing to the infringement of the '256 patent, Rimfrost will suffer irreparable injury. Rimfrost has no adequate remedy at law and considering the balance of hardships between Rimfrost and Aker, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**ANSWER:** Paragraph 66 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 66.

## COUNT II

### Patent Infringement of U.S. Patent No. 10,499,673

67.     The allegations above are incorporated herein by reference.

**ANSWER:** Answering Defendants repeat and incorporate here by reference their responses to the preceding paragraphs.

68.     On information and belief, Aker has knowledge of the '673 patent. This is evident from its analysis of the parent '256 patent and its filing of *Ex Parte* Reexamination Request No. 90/019,810 for the '256 patent. Aker has analyzed the '256 patent family of which the '673 patent is a member. *See generally* Matthew Wilcox, *Aker Move Sparks New Chapter in Decade-Long Krill War*, SALMONBUSINESS (Jan. 10, 2025), https://www.salmonbusiness.com/aker-move-sparks-new-chapter-in-decade-long-krill-war/) (reporting "numerous legal battles over patents" between Aker and Rimfrost) (**Ex. T).** It is reasonable to infer that Aker has knowledge of the '673 patent and its infringement.

**ANSWER:** Answering Defendants admit that they submitted Ex Parte Reexamination Request No. 90/019,810 to the USPTO with respect to the '256 patent.  To the extent a further response is required, the referenced publication speaks for itself and is the best source for its content.  Answering Defendants deny any remaining allegations in Paragraph 68.

69.     Aker has at no time been licensed under the '673 patent.

**ANSWER:** Paragraph 69 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 69.

70.     Aker has directly infringed, and is currently directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '673 patent, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering to sell in the United States, and/or importing into the United States infringing products, including without limitation the Purasana krill oil and California Gold krill oil products.

**ANSWER:** Paragraph 70 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 70.

71.     By way of example, at least the Purasana krill oil and California Gold krill oil products infringe at least claim 17 of the '673 patent.

**ANSWER:** Paragraph 71 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 71.

72.     On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises an extracted crustacean oil composition. *See supra* ¶ 40.

**ANSWER:** Paragraph 72 states a legal conclusion to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 72.

73.     On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises at least 40 wt % total phospholipids. *See supra* ¶ 42.

**ANSWER:** Paragraph 73 states a legal conclusion to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 73.

74.     On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises less than 20 mg N-trimethylamine oxide/100g of the crustacean oil and less than 1 mg N-trimethylamine/100 g of the crustacean oil. *See supra* ¶ 44.

**ANSWER:** Answering Defendants lack knowledge sufficient to form a belief as to the allegations in Paragraph 74 and therefore deny them.

75.     On information and belief, each of the Purasana krill oil and California Gold krill oil products comprises total phospholipids that comprise at least 75 wt % phosphatidylcholine and at least 2% phosphatidylethanolamine of the total phospholipids. *See supra* ¶ 45.

**ANSWER:** Answering Defendants lack knowledge sufficient to form a belief as to the allegations in Paragraph 75 and therefore deny them.

76.     The claim charts attached hereto as **Exhibits W and X** identify on a limitation-by-limitation basis where each limitation of claim 17 of the '673 patent is found within the Purasana krill oil and California Gold krill oil products, respectively.

**ANSWER: A**nswering Defendants admit that Exhibits W and X of the Complaint purport to be claim charts relating to the '673 patent.  Answering Defendants deny any remaining allegations in Paragraph 76.

77.     On information and belief, Aker induces infringement of the '673 patent, in violation of 35 U.S.C. § 271(b). On information and belief, Aker has knowledge of the '673 patent. Aker instructs and induces its customers, e.g., Purasana and California Gold, to directly infringe the '673 patent. Aker has known or should have known that its acts would cause its customers to infringe the '673 patent.

**ANSWER:** Paragraph 77 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 77.

78.     On information and belief, Aker contributorily infringes the '673 patent, in violation of 35 U.S.C. § 271(c). On information and belief, Aker has knowledge of the '673 patent. Aker has sold or supplied components (e.g., Superba™ krill oil) that form a significant part of the invention described in the '673 patent. On information and belief, Aker knows that the Superba™ krill oil is specially made or adapted for use in infringing the '673 patent, that Superba™ krill oil is not a staple article or commodity of commerce, and that Superba™ krill oil is not suitable for substantial noninfringing use.

**ANSWER:** Paragraph 78 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 78.

79.     On information and belief, Aker's infringement of the '673 patent has been willful.

**ANSWER:** Paragraph 79 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 79.

80.     As a direct and proximate result of Aker's willful infringement of the '673 patent, Rimfrost has been and will continue to be irreparably damaged and deprived of its rights in the '673 patent in amounts not yet determined, and for which Rimfrost is entitled to relief.

**ANSWER:** Paragraph 80 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 80.

81.     On information and belief, Aker has acted with full knowledge of the '673 patent and without a reasonable basis for believing that Aker would not be liable for direct infringement, active inducement of infringement, and/or contribution to the infringement by others of the '673 patent. On information and belief, the direct and indirect infringement by Aker of the '673 patent was and is willful. Aker's conduct renders this case "exceptional" under 35 U.S.C. § 285.

**ANSWER:** Paragraph 81 states legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in Paragraph 81.

82.     Rimfrost has been and will be substantially and irreparably damaged by Aker's infringement of the '673 patent. Unless Aker is enjoined from directly infringing, actively inducing infringement of, and contributing to the infringement of the '673 patent, Rimfrost will suffer irreparable injury. Rimfrost has no adequate remedy at law and considering the balance of hardships between Rimfrost and Aker, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**ANSWER:** Paragraph 82 states legal conclusions to which no response is required. To the extent a response is required, Answering Defendants deny the allegations in Paragraph 82.

## ANSWER TO RIMFROST TECHS.'S PRAYER FOR RELIEF

The remainder of Rimfrost Techs.'s Complaint recites a prayer for relief to which no response is required. To the extent a response is required, Answering Defendants deny that Rimfrost is entitled to any remedy or relief, including those requested.

## GENERAL DENIAL

Answering Defendants deny all allegations in Rimfrost Techs.'s Complaint not expressly admitted.

## AFFIRMATIVE DEFENSES

Without any admission as to the burden of proof, burden of persuasion, or the truth of any allegation in Rimfrost Techs.'s Complaint, and expressly reserving their right to assert additional defenses, Answering Defendants state the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '256 PATENT)

Answering Defendants do not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action have not infringed, any valid claim of the '256 Patent.

## SECOND AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '673 PATENT)

Answering Defendants do not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action have not infringed, any valid claim of the '673 Patent.

**THIRD AFFIRMATIVE DEFENSE**
**(INVALIDITY OF THE '256 PATENT)**

The '256 Patent is invalid for failure to satisfy one or more conditions and requirements of patentability set forth in 35 U.S.C. § 101, et seq. Each and every claim of the '256 Patent is invalid for failing to meet one or more of the requisite conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, or under any of the judicially created doctrines of invalidity.

**FOURTH AFFIRMATIVE DEFENSE**
**(INVALIDITY OF THE '673 PATENT)**

The '673 Patent is invalid for failure to satisfy one or more conditions and requirements of patentability set forth in 35 U.S.C. § 101, et seq. Each and every claim of the '673 Patent is invalid for failing to meet one or more of the requisite conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, or under any of the judicially created doctrines of invalidity.

**FIFTH AFFIRMATIVE DEFENSE**
**(NO COSTS)**

Rimfrost's recovery is limited by 35 U.S.C. § 288.

**SIXTH AFFIRMATIVE DEFENSE**
**(LIMITATION OF DAMAGES – FAILURE TO MARK)**

Rimfrost Techs.'s claim for damages, if any, is barred in whole or in part under 35 U.S.C. § 287 because of Rimfrost's failure to mark or make reasonable efforts to have marked.

**SEVENTH AFFIRMATIVE DEFENSE**
**(ESTOPPEL, WAIVER, ACQUIESCENCE, LACHES, AND UNCLEAN HANDS)**

Rimfrost's claims and/or requested relief are barred by one or more of the doctrines of estoppel, waiver, acquiescence, laches, and unclean hands for enforcing, or claiming a reasonable royalty and/or lost profits with respect to any claim of the '256 and '673 Patents.

## EIGHTH AFFIRMATIVE DEFENSE
### (NO WILLFUL INFRINGEMENT)

Answering Defendants have not willfully infringed, and do not willfully infringe, any valid claim of the '256 and/or '673 Patents.

## NINTH AFFIRMATIVE DEFENSE
### (NO EXCEPTIONAL CASE)

Answering Defendants' actions in defending this case or otherwise do not give rise to an exceptional case in Rimfrost's favor under 35 U.S.C. § 285.

## TENTH AFFIRMATIVE DEFENSE
### (PROSECUTION HISTORY DISCLAIMER AND ESTOPPEL)

Rimfrost is barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the '256 and '673 Patents or related applications, from asserting any interpretation of any valid claims of the '256 and/or '673 Patents that would be broad enough to cover any accused product alleged to infringe the '256 and/or '673 Patents, either literally or by application of the doctrine of equivalents, or under any theory of infringement.

## ELEVENTH AFFIRMATIVE DEFENSE
### (ADDITIONAL DEFENSES)

Answering Defendants reserve the right to assert further defenses in the event that discovery indicates such defenses would be appropriate.

## JURY DEMAND

Answering Defendants hereby demand a trial by jury on all claims and issues so triable.

## RELIEF REQUESTED

WHEREFORE, Answering Defendants respectfully request that the Court enter a Judgment and Order in their favor and against Rimfrost Techs. as follows:

a) Dismissing Rimfrost Techs.'s Complaint with prejudice and denying each and every prayer for relief contained therein;

b) Declaring that Answering Defendants do not infringe any claim of the '256 Patent;

c) Declaring that Answering Defendants do not infringe any claim of the '673 Patent;

d) Declaring that the claims of the '256 Patent are invalid;

e) Declaring that the claims of the '673 Patent are invalid;

f) Declaring that Rimfrost and its agents, representatives, attorneys, and those persons in active concert or participation with them who receive actual notice thereof, be preliminarily and permanently enjoined from threatening or initiating infringement litigation against Answering Defendants or any of their customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors, or customers of Answering Defendants, or charging any of them either orally or in writing with infringement of the '256 and '673 Patents;

g) Awarding Answering Defendants their attorneys' fees, together with costs and disbursements, including because this case is exceptional under 35 U.S.C. § 285; and

h) Awarding such other and further relief as the Court deems fair and just.

-72-

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Aker BioMarine Antarctic US
LLC, Aker BioMarine Manufacturing LLC,
Aker BioMarine US Holding Inc., Aker
BioMarine ASA and Aker BioMarine
Human Ingredients AS*

OF COUNSEL:
Elaine Herrmann Blais
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Natasha E. Daughtrey
GOODWIN PROCTER LLP
601 South Figueroa Street
Suite 4100
Los Angeles, CA 90017
(213) 426-2500

Gabriel B. Ferrante
Olubukola Ayetiwa
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Dated: April 21, 2026