**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RIMFROST TECHNOLOGIES AS,<br><br>*Plaintiff*,<br><br>v.<br><br>AKER BIOMARINE ANTARCTIC US LLC, AKER BIOMARINE MANUFACTURING LLC, AKER BIOMARINE US HOLDING INC., and AKER BIOMARINE ASA,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. 25-1559-WCB |
| AKER BIOMARINE ANTARCTIC US LLC, AKER BIOMARINE MANUFACTURING LLC, AKER BIOMARINE US HOLDING INC., and AKER BIOMARINE ASA,<br><br>*Third-Party Plaintiffs,*<br><br>v.<br><br>RIMFROST AS and RIMFROST TECHNOLOGIES AS,<br><br>*Counterclaim- Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER**

This case involves disputes between two sets of parties in the krill oil business. The plaintiff, Rimfrost Technologies AS (sometimes referred to as Rimfrost Techs), has filed a patent infringement claim against the four related defendants, referred to collectively as "Aker," alleging that the defendants have infringed the claims of two patents owned by Rimfrost Technologies AS, U.S. Patent No. 9,814,256 ("the '256 patent"), and U.S. Patent No. 10,499,673 ("the '673 patent").

D.I. 1. The defendants have filed counterclaims against Rimfrost AS and Rimfrost Technologies AS (sometimes collectively referred to as "Rimfrost"). D.I. 29. Aker's counterclaims are for tortious interference by Rimfrost under Delaware law; false advertising by Rimfrost AS under the Lanham Act, 15 U.S.C. § 1125(a); infringement of Aker's U.S. Patent No. 10,010,567 ("the '567 patent") by Rimfrost AS, including direct infringement, induced infringement, and contributory infringement, in violation of 35 U.S.C. § 271(a), (b), and (c); a declaratory judgment of invalidity of the '256 patent; a declaratory judgment of non-infringement of the '256 patent; a declaratory judgment of invalidity of the '673 patent; and a declaratory judgment of non-infringement of the '673 patent.

Rimfrost AS and Rimfrost Technologies AS have filed a motion to dismiss all or portions of several of the counterclaim-plaintiffs' counterclaims. D.I. 36, 37. The motion seeks dismissal of Aker's counterclaims for tortious interference, for contributory infringement of the '567 patent, and for infringement and willful infringement of the '567 patent against Rimfrost Technologies AS. The motion to dismiss will be granted.

**1. Tortious Interference**

Rimfrost moves to dismiss Aker's tortious interference counterclaim on two grounds. First, Rimfrost argues that Aker's allegations of tortious interference must be dismissed because Rimfrost's conduct about which Aker complains is protected by the *Noerr-Pennington* doctrine, which immunizes petitioning activity such as the initiation of a claim for judicial relief against patent infringement. Second, Rimfrost argues that Aker has failed to sufficiently allege the elements of tortious interference under the applicable state law.

Under Delaware law, "[t]o survive dismissal, a claim for tortious interference with business relations must allege: '(a) the reasonable probability of a business opportunity, (b) the intentional

interference by defendant with that opportunity, (c) proximate causation, and (d) damages.'" *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981)); *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017). As the Delaware Supreme Court has explained, "[w]e apply these elements to a particular case 'in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.'" *Malpiede*, 780 A.2d 1099 (quoting *DeBonaventura*, 428 A.2d at 1153). Under Delaware law, the plaintiff has the burden to prove that the alleged tortious interference constituted wrongful interference, and whether the defendant used wrongful means turns on whether the competitor used tactics that are independently actionable. *See CGB Occupational Therapy, Inc. v. KHA Health Servs., Inc.*, 357 F.3d 375, 388 (3d Cir. 2004); *Agilent Techs., Inc. v. Kirkland*, C.A. No. 3512, 2009 WL 119865, at *7–8 (Del. Ch. Jan. 20, 2009); *Ryanair DAC v. Booking Holdings Inc.*, No. 20-1191, 2024 WL 3732498, at *31 (D. Del. June 17, 2024).

Aker's factual allegations in support of its tortious interference claim do not suffice to raise a claim of tortious interference under Delaware law. In particular, Aker's pleading does not identify any independent actionable conduct on Rimfrost's part that would support its counterclaim, and it does not identify any damages suffered by Aker as a result of Rimfrost's conduct.[1] For those reasons, the tortious interference counterclaim brought by Aker must be dismissed.[2]

[1] The only unlawful acts alleged by Aker are false advertising and patent infringement, but those acts do not pertain to the tortious interference claim raised by Aker.

[2] Because Aker has not satisfied the pleading requirements for tortious interference, it is unnecessary to address the *Noerr-Pennington* doctrine raised by Rimfrost. In any event, courts in Delaware have held that the Delaware law of tortious interference must be applied with deference to the right of parties to seek legal redress for alleged injuries, which is essentially the same principle that is protected by the *Noerr-Pennington* doctrine. *See Lipson v. Anesthesia Servs., P.A.*,

**2. Contributory Infringement**

Rimfrost also moves to dismiss the portion of Aker's counterclaim alleging contributory infringement of Aker's '567 patent on several grounds, including that contributory infringement is limited to infringement by a component of an infringing product and does not include instances in which the component is itself the allegedly infringing product, which is the case here.

The contributory infringement statute, 35 U.S.C. § 271(c), makes it clear that contributory infringement is limited to instances in which a party offers to sell or sells within the United States or imports into the United States "a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent." That is, contributory infringement is limited to components that are used in infringing products or processes.

Aker does not allege that Rimfrost sells or imports anything that constitutes a "component" of an infringing product. The sale or importation of infringing products by itself does not constitute contributory infringement.

I addressed this issue recently in *Guidance Endodontics, LLC v. Dentsply Sirona, Inc.*, No. 25-1123, 2026 WL 2287895 (D. Del. Aug. 10, 2026). I adhere to the position I took in that case, where I held that contributory infringement does not apply to the sale or importation of a device that is itself accused of infringement. I adopt the analysis from that case, which I quote at length below:

> Whether an entire device can support a contributory infringement claim is an issue on which district courts have reached conflicting conclusions. *Compare,*

790 A.2d 1261, 1285 & n.71 (Del. Super. 2001), quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980), *aff'd*, 428 A.2d 1151 (Del. 1981); *Ryanair*, 2024 WL 3732498, at *31.

> *e.g., Conair Corp. v. Jarden Corp.*, No. 13-CV-6702, 2014 WL 3955172, at *5 (S.D.N.Y. Aug. 12, 2014) ("the fact that Conair's contributory infringement claim is essentially a 'repetition' of its direct infringement claim . . . is not fatal provided that the contributory infringement claim is otherwise adequately pled"), and *Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 594 (E.D. Tex. 2019) (finding "unpersuasive" the argument "that the Accused Products cannot be considered a component of the patented invention because . . . the Accused Products themselves directly infringe") *with HSM Portfolio LLC v. Fujitsu Ltd.*, Civil Action No. 11-770, 2014 WL 4468088, at *1 (D. Del. Sept. 9, 2014) ("Toshiba's main argument is that the accused semiconductor chips are not components especially designed for an infringing product because they are accused of direct infringement in and of themselves. I agree."), and *Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*, Civil Action No. 20-1197, 2021 WL 1785072, at *5 (D. Del. May 5, 2021), report and recommendation adopted, Civil Action No. 20-1197, 2021 WL 5860783 (D. Del. Aug. 12, 2021) ("The Court agrees with Tonal that the 'Tonal Device itself cannot be a "component" of a patented machine, because ICON [is alleging] that the Tonal Device is the patented machine, and thus directly infringes the asserted patents.'").
>
> I find the reasoning of the courts that have dismissed such claims to be convincing, and I will follow the same approach. As Judge Andrews explained in the *HSM Portfolio* case, it does "not make legal sense" to allow a product that is accused of direct infringement to support a separate contributory infringement claim, because the "reason that it is necessary to plead that the component has no substantial noninfringing uses is that the component alone does not directly infringe." *HSM Portfolio*, 2014 WL 4468088, at *1; *see also id.* at *1 n.1 ("Section 271(c) codified [a] common type of [infringement], where a seller would sell a component that was itself not technically covered by the claims of a product or process patent but that had no other use except with the claimed product or process.") (quoting Robert L. Harmon, Patents and the Federal Circuit 553 (11th ed. 2013)).

*Guidance Endodontics*, 2026 WL 2287895, at *10 (alterations and omissions in original).

To the extent that Aker relies on *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27 (Fed. Cir. 2024), for the contrary proposition, Aker is misreading that case. While the court in *AlexSam* referred at one point to the requirements that a claim of contributory infringement adequately allege that the defendant had knowledge of the patent in suit and knowledge of the infringement, and that the accused product was not a stable article or commodity suitable for a non-infringing use, that statement was made in the context of the court's treatment of contributory infringement as applying only to components of an infringing device or process. The court made that clear when

it added, in the same paragraph, that "the component [that is the subject of the contributory infringement claim] must constitute 'a material part of the invention.'" *AlexSam*, 119 F.4th at 47 (quoting *Commil USA, LLC v. Cisco Sys., Inc.,* 575 U.S. 632, 639 (2015)).

**3. Infringement and Willful Infringement Against Rimfrost Technologies AS**

Finally, Rimfrost moves to dismiss the claims of infringement and willful infringement against Rimfrost Technologies AS on the ground that the complaint does not make specific allegations against Rimfrost Technologies AS to support a claim of either infringement or willful infringement against that party. In particular, according to Rimfrost, Aker alleges infringing conduct by Rimfrost AS and then inappropriately concludes that "Rimfrost" (defined to include both Rimfrost Technologies AS and Rimfrost AS) infringes and does so willfully. *See* D.I. 37 at 3.

The allegations regarding Rimfrost Technologies AS are extremely thin. In the single paragraph that addresses the liability of Rimfrost Technologies AS, Aker alleges that "Rimfrost AS and/or Rimfrost Techs. have made, used, sold, offered for sale its infringing Rimfrost Sublime Krill Oil Product . . . ." D.I. 29 at ¶ 171. The use of the term "and/or" does not directly allege that Rimfrost Technologies AS has engaged in the infringing activity, as it leaves open the possibility that only Rimfrost AS has done so. As such the complaint fails to make an unequivocal allegation of infringement by Rimfrost Technologies AS. *See Drew Techs., Inc. v. Robert Bosch, L.L.C.*, No. 12-cv-15622, 2014 WL 562458, at *3 (E.D. Mich. Feb. 13, 2014).

The only support provided by Aker for the suggestion that Rimfrost Technologies AS may have been engaged in infringing activity is the allegation that "Rimfrost Techs.'s Trademark . . . remained in force until July 16, 2021." D.I. 29 at ¶ 171. But the fact that the trademark remained in force during that time is no evidence that Rimfrost Technologies AS engaged in any infringing

conduct. As Rimfrost points out, the former ownership of the trademark does not establish that Rimfrost Technologies AS engaged in infringement. A trademark holder may license its mark without making, using, or selling any product; indeed, that is essentially the role that Aker itself recognized was played by Rimfrost Technologies AS, as Aker alleged that Rimfrost Technologies AS was an IP holding company, and Rimfrost AS was the operating entity. *See* D.I. 29 at ¶¶ 43–45.

IT IS SO ORDERED.

SIGNED this 8th day of September, 2026.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE